· RECEIVED
IN LAKE CHARLES, LA

APR - 9 2008
ᗷᏗᴦ
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **GRAND ACADIAN, INC.** | : | **DOCKET NO. 2:07 CV 295** |
| **VS.** | : | **JUDGE MINALDI** |
| **FLUOR CORPORATION, ET AL** | : | **MAGISTRATE JUDGE KAY** |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment, filed by third-party defendant Gray Insurance Company (hereinafter "Gray") [doc. 144]. Gray seeks a summary judgment ruling that it has no duty to defend or indemnify third-party plaintiff Fluor Enterprises, Inc. (hereinafter "Fluor") against the underlying claims in this case made by the plaintiff Grand Acadian. Fluor submitted an Opposition [doc. 150]. Gray filed a Reply [doc. 152]. Fluor filed a first Sur-Reply [doc. 159]. Gray filed a first Sur-Reply [doc. 157]. Fluor filed a second Sur-Reply [doc. 163]. Gray filed a second Sur-Reply [doc. 161].

**FACTS & PROCEDURAL HISTORY**

A.) Background Facts

Grand Acadian began preliminary development of an RV resort in Sulphur, Louisiana in 2004 and 2005.[1] When hurricanes Katrina and Rita struck Louisiana, rather than completing the RV resort, Grand Acadian leased half of its property to the Federal Emergency Management Agency

---

[1] The Magistrate's Report and Recommendation clearly articulates the pertinent facts underlying this lawsuit. Report and Recommendation, at 1 (Nov. 7, 2007) [doc. 44].

1

(hereinafter "FEMA") for an emergency housing trailer park.[2] FEMA contracted with Fluor to design and construct the FEMA trailer park.[3] Fluor contracted with Dexter Honore (hereinafter "Honore") to assist with construction,[4] who contracted with Group Contractors, LLC (hereinafter "Group") to assist.[5]

In its original, first and second supplemental and amending complaints, Grand Acadian claims that Fluor, Honore and/or Group destroyed the underlying clay base of the soil and essentially destroyed the property's usefulness for commercial development.[6] On January 30, 2006, approximately three weeks after Fluor, Honore, and/or Group work crews began work, FEMA halted major work on the site.[7] On February 15, 2006, FEMA ordered Group to cease construction on the Grand Acadian site.[8]

In Grand Acadian's first supplemental and amending complaint, it alleges that:

19. Unfortunately, Fluor, Honore and/or Group failed to follow the engineering plans and failed to exercise reasonable care in the performance of the work.

20. Fluor failed to retain qualified management, oversight, quality assurance, subcontractors and other qualified persons.

---

[2] *Id.*

[3] *Id.*

[4] Fluor and Honore entered into a contract entitled Blanket Ordering Agreement (hereinafter "BOA"), where Honore agreed to furnish labor and materials. Fluor's Ex. B-1.

[5] Honore and Group entered into the Group Subcontract (hereinafter "Subcontract") in which Group became one of Honore's subcontractors. Fluor's Ex. B-2.

[6] Compl. [docs. 1, 108, 118].

[7] *Id.*

[8] *Id.*

21. Fluor, Honore and/or Group failed to timely perform soil testing, failed to provide for adequate drainage, failed to dig drainage ditches or retention ponds on the site prior to employing heavy machinery on the raw land. After the site became wet due to rain, Fluor, Honore and/or Group continued to operate heavy machinery on the site. Fluor, Honore and/or Group tracked machinery back and forth across the undrained site, mixing topsoil, surface debris, mud, clay, and other material. This unstable surface waste cannot be built upon. Furthermore, much of the unstable surface waste has eroded away. The unstable surface waste that remains must be removed and replaced with suitable soil before any development of the FEMA-West-Half can occur.

22. Fluor, Honore and/or Group effectively lowered the base otherwise suitable for construction.[9]

Furthermore, Grand Acadian seeks damages including the cost of repairing and restoring the FEMA-West-Half; incidental damages; lost infrastructure and improvements; the effective destruction of the premium RV Park; the lost of past and future income; the potential liability associated with the sediment and silt on adjacent wetlands; and any other damages.[10] Grand Acadian also alleges that Fluor is vicariously liable for Group's negligence.[11] Grand Acadian also alleges incidental damages to the Grand-East-Half, including the effective destruction of the premium RV Park.[12]

B.) Procedural History

On July 25, 2006, Grand Acadian filed an administrative claim against FEMA pursuant to the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, which was denied. Grand Acadian filed suit against Group and its subcontractors in the 14th Judicial District Court for Calcasieu Parish on

---

[9] First Supplemental and Amending Complaint [doc. 108].

[10] *Id.*

[11] *Id.*

[12] *Id.*

January 3, 2007, seeking to recover for damages sustained to the RV park.[13] Group removed the lawsuit pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).[14]

On July 22, 2008, Fluor demanded defense and indemnity from Gray as an additional insured under Grand Acadian's commercial general liability (hereinafter "CGL") policy and excess liability policy (hereinafter collectively "the Policy"), and an indemnitee under the Honore-Group subcontract. On August 20, 2008, Gray denied coverage pursuant to exclusions and because the damage alleged does not constitute an "occurrence" under the policy or excess policy. On September 23, 2008, Fluor filed a third-party complaint against Gray.[15] On November 14, 2008, Gray filed this Motion for Summary Judgment.

C.) The BOA

On December 28, 2005, Fluor entered into the BOA with Honore, whereby Honore agreed to furnish labor and materials for the construction.[16] Honore also agreed to provide insurance for and indemnify Fluor for all claims arising from Honore's work.[17] Fluor and Honore are the only two parties to the BOA.[18] The parties are listed as "Fluor Enterprises, Inc." and "Dexter Honore Construction Co., LLC."[19]

---

[13] Report and Recommendation, at 2.

[14] *Id.*

[15] [doc. 132].

[16] Fluor's Ex. B-1.

[17] *Id.*

[18] *Id.*

[19] *Id.*

4

D.) The Subcontract

On January 4, 2006, Honore entered into a subcontract with Group, whereby Group became a primary subcontractor for the Grand Acadian project.[20] The Subcontract, which Honore drafted,[21] refers to the BOA, and erroneously refers to Fluor Enterprises, Inc. as "Flour Contract Management."[22]

The Subcontract required Group to "purchase and maintain insurance that will protect it from the claims arising out of its operations under this Agreement, whether the operations are by the Subcontractor, or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for those acts any of them may be liable."[23] The Subcontract also required Group to name Fluor and Honore as "additional insureds."[24] The Subcontract further required Group to "indemnify, hold harmless and defend Contractor, Contractor's subcontractors, Owner...." from any or all claims, suits...resulting from or arising out of the Work or Subcontractor's failure to comply with the terms or obligations of this Agreement or the Prime Contract Documents...."[25]

---

[20] Fluor's Ex. B-2.

[21] Fluor's Ex. B (Dexter Honore Aff.). Mr. Honore's affidavit states that the use of the incorrect Fluor name was nothing more than inadvertence. *Id.*

[22] Fluor's Ex. B-2.

[23] *Id.* at 6.

[24] *Id.* at 7.

[25] *Id.*

5

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party. . . ." *Id.*

## GOVERNING LAW

### A.) Principles of Contract Interpretation

> Under Louisiana law, an insurance policy is a contract that must be construed in accordance with the general rules of interpretation of contracts set forth in the Louisiana Civil Code. A court's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. The [w]ords of a contract must be given their generally prevailing meaning, and when the contractual language is clear and explicit and leads to no absurd consequences, no further

6

interpretation may be made in search of the parties' intent.

*Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 660-661 (5th Cir. 2005) (internal citations omitted).

### B.) Insurance Company's Duty to Defend

An insurance company's duty to defend is as follows:

> Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. *American Home Assur. Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (La. 1969). The insurer's duty to defend suits is determined by the allegations of the petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *Id*. The allegations of the petition should be liberally construed in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit against its insured. *Id.* The duty to defend is not dependent upon the outcome of the suit. *Id.*

*Mossy Motors, Inc. v. Cameras America*, 04-0726 (La. App. 4 Cir. 03/02/2005); 898 So.2d 602, 606.

Accordingly, courts employ the 'eight corners' rule when determining whether an insurer has a duty to defend, examining the four corners of the petition and the four corners of the insurance policy. *Id.*; *see also Lamar*, 396 F.3d at 600 ("[w]hether an insurer has a duty to defend is determined solely by 'compar[ing] the allegations in the complaint against the insured with the terms of the policy' at issue-the so-called 'eight corners' rule"). If the court concludes that "there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded," then the insurance company has a duty to defend. *Id.* So long as there is at least a single allegation in the petition for which coverage is not excluded, a duty to defend exists. *Id.* "Assuming all the allegations of the petition to be true, if there would be both coverage under the policy and liability to the plaintiff, the insurer must defend the lawsuit regardless of its outcome." *Id.*

7

## ANALYSIS

Gray asserts four grounds for summary judgment.[26] First, Gray asserts that Fluor is not an additional insured on Group's policies. Second, Gray asserts that there was no "occurrence" that would trigger coverage. Third, Gray argues that Fluor's claims are excluded by various property damage and work exclusions. Fourth, Gray maintains that the impaired property exclusion bars coverage for claims for the cost of repairing and restoring the site, incidental damages, lost infrastructure and improvements, and loss of past and future income.

### 1.) Whether Fluor is an additional insured on Group's policies

Group's insurance policy with Gray states that additional insureds shall be added "when required by written contract."[27] Gray argues that it is not obligated to defend Fluor because Fluor is not listed in the Subcontract. Gray argues that because "Flour Contract Management" and not

---

[26] In its first Sur-Reply, Gray raises the argument that coverage is excluded under the work and product exclusions. These provisions exclude coverage for:

> (k) "property damage" to "your product" arising out of it or any part of it.
> (l) "property damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

As explained in 15 La. Civ. L. Treatise, Insurance Law & Practice § 198 (3d ed.), "these exclusions reflect the intent of the insurance industry to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship." Exclusion 2(k) does not apply because there is no "product" for which property damage could occur, as the Policy defines "product" as "any goods or products, other than real property..." Furthermore, 2(l) does not bar coverage for damage to property other than to the insured's work. 15 La. Civ. L. Treatise, Insurance Law & Practice § 198 (3d ed.). Grand Acadian alleges property damage other than to Fluor's work. Moreover, 2(l) does not apply when the property damage arises out of work performed by a subcontractor. Grand Acadian is suing Fluor for property damage arising out of work performed by Fluor, Honore, and/or Group, and therefore exclusion 2(l) does not apply.

[27] Gray's Ex. A 0071.

"Fluor Enterprises, Inc." is listed in the Subcontract, Gray owes no duty to Fluor. Further, Gray argues that Group and Fluor may not now rewrite the contract to require coverage. In Reply, Gray argues that Fluor lacks standing to sue Gray.[28]

Fluor argues that the mistake in the Subcontract does not defeat coverage. Fluor asserts that "Flour Contract Management" is not a separate legal entity, but is rather a functioning department of Fluor Enterprises, Inc., and is responsible for preparing and reviewing legal contracts.[29] Moreover, the affidavit of Dexter Honore states that the use of "Flour Contract Management" was an inadvertent mistake.[30] Group received a copy of the BOA prior to entering into the Subcontract, which correctly listed Fluor Enterprises, Inc. as the Owner.[31] Fluor argues that other courts have

---

[28] Gray cites several cases to demonstrate that Fluor has no standing to assert an interest under the Gray policies. *See, e.g., Obioha v. Proctor Fin. Ins. Co.*, 06-5364 & 06-9231, 2007 WL 2903227, *2-3 (E.D. La. 10/02/2007) (finding that the plaintiff could not sue the defendant for breach of insurance contract because the plaintiff was not a party to the insurance contract and there could therefore be no breach); *Riley v. Transamerica Ins. Group, Premiere Ins. Co.*, 923 F. Supp. 882, 887 (E.D. La. 1996) (finding an individual who was neither the mortgagor nor the mortgagee lacked standing to file a claim under a mortgagee-placed policy); *Woodruff v. State Farm. Ins. Co.*, 9902818 (La. App. 4th Cir. 6/14/00); 767 So.2d 785, 788-89 (finding a motorist who was in an accident with an insured driver lacked standing to sue the insured driver's insurance company under La. Rev. Stat. Ann. § 22:1220 because the motorist was not insured under the contract as is required to recover pursuant to § 22:1220). These cases are distinguishable because none involve a commercial general liability policy.

[29] Fluor Ex. A (Charles McManemin Aff.). In Reply, Gray notes that Grand Acadian initially sued Fluor Contract Management, but has since amended its petition to drop its claim against Fluor Contract Management, which indicates that Grand Acadian believes it has no liability. Gray proffers this argument to demonstrate that the exposure of Fluor Contract Management is different than Fluor Enterprises' exposure. This Court finds the fact that Grand Acadian amended its petition to drop Fluor Contract Management from the lawsuit supports the conclusion that Fluor Contract Management is not an independent legal entity and was erroneously named in the Subcontract.

[30] Fluor Ex. B (Dexter Honore Aff.)

[31] *Id.*

refused to allow a mistake in an insurance contract defeat coverage, and Fluor additionally argues that the insurance policy may be reformed to reflect the intention of the parties, because the parties made a mutual mistake.

"Insurance contracts do not fail merely by naming an incorrect party." *Marketfare Annunciation v. United Fire & Cas. Ins. Co.*, 06-7232, 2007 WL 2007986, *2 (E.D. La. 07/10/2007) (citing *Providence Washington Ins. Co. v. Stanley*, 406 F.2d 735, (5th Cir. 1969)). In *Marketfare*, the insurance policy listed "The Estate of John Schwegmann" as the additional insured on the commercial general liability ("CGL") policy. 2007 WL 2007986, at *2. Despite the fact that none of the intervener property owners were named on the insurance policy, they sought to recover under the policy. *Id.* The court concluded that "The Estate of John Schwegmann" was shorthand for all of the owners of the building, and therefore the parties intended to include the owners as additional insureds. *Id.*

As with other written contracts, Louisiana permits a written insurance contract to be reformed to conform to the original intention of the parties. *Samuels v. State Farm Mut. Ins. Co.*, 06-0034 (La. 10/17/06); 939 So.2d 1235, 1240. The party seeking reformation must prove that the instrument had a mutual mistake. *Id.* (noting that the party seeking reformation must prove by a preponderance of the evidence if the reform did not "substantially affect the risk assumed by the insurer"). Parol evidence is admissible to show a mutual error warranting reformation, even absent an ambiguity in the contract. *Id.*[32]

---

[32] According to 15 La. Civ. L. Treatise, Insurance Law & Practice § 5 (3d ed.):

Commonly, the mutual error asserted relates not to the printed form of the policy but rather to the persons insured, the property covered, the amount of

Although Fluor argues that the insurance policy may be reformed to reflect the intention of the parties, it is not the insurance policy that contains the error. The Policy does not specifically list any Fluor entity, but rather states that additional insureds shall be added "when required by written contract." The Policy, therefore, would not be reformed, but rather the Subcontract.

The uncontroverted evidence establishes that "Flour [sic] Contract Management," as appears in the Subcontract, is not a separate legal entity, but is an operational division within Fluor Enterprises. Moreover, Honore provided Group with a copy of the BOA, which correctly names Fluor, prior to executing the Subcontract. Honore drafted the Subcontract and admits it made an error in drafting. The Policy will cover additional insureds as required by written contract. Accordingly, there is sufficient evidence that Group and Honore made a mutual mistake in naming "Flour [sic] Contract Management" instead of Fluor Enterprises, Inc. in the Subcontract such that Fluor Enterprises, Inc. would be an additional insured "required by written contract" pursuant to the Policy. Therefore, this Court concludes that Gray has not met its burden of proving that Fluor is not an additional named insured under the Policy.

### 2.) Whether an "occurrence" has triggered coverage under Gray's policy

The primary policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The excess policy defines an

---

coverage or the type of coverage purchased. Reformation actions brought on behalf of persons who were not named as insureds in the policy have been successful upon proof that either (1) the agent was aware of the real party at interest when the policy was originally issued and mistakenly issued the policy in another's name...

"occurrence" as "an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in property damage...during the policy period."[33] The primary policy only covers "property damage" that is caused by an "occurrence."[34]

Gray argues that there was no "occurrence" that would trigger coverage. Gray argues that Grand Acadian's claims are essentially claims for breach of contract, which the policy does not cover. *See, e.g., Lamar*, 396 F.3d at 657 n.2 (noting that "an insurer is not obligated under a general insurance contract to defend or indemnify its insured for a breach of contract claim"). Gray further argues that the alleged failure to take the steps required by the contract, such as failure to follow the engineering plans, retaining qualified management, or performing soil testing, are intentional rather than accidental acts and are therefore not "occurrences."

Fluor argues that Grand Acadian alleges more than just improper workmanship, and that the main thrust of Grand Acadian's claims are property damage, which is covered as an "occurrence." Relying upon *Iberia Parish School Board v. Sandifer & Son Construction Company, Inc.*, Fluor argues that many Louisiana courts have held that property damages arising from construction defects constitute an occurrence. 98-0319 (La. App. 3 Cir. 10/28/98); 721 So.2d 1021, 1023-34 (quoting 1 William S. McKenzie and H. Alston Johnson III, *Insurance Law and Practice* § 183, p. 370, in 15 Louisiana Civil Law Treatise (1996)):

> Whether there has been an occurrence, however, depends upon whether there has been an accident, not upon the legal cause or consequence of that accident. Defective workmanship or the incorporation of defective materials is an "accident" under the

---

[33] Gray Ex. B, p. 120.

[34] Gray Ex. A, p. 88.

12

> *Kendrick* analysis. With construction defects, the real issue usually is not whether there has been an "occurrence," but whether there has been property damage during the policy period and, if so, whether the "work" exclusion is applicable. If the roof leaks or the wall collapses, the resulting property damage triggers coverage under an "occurrence" basis policy, even if the sole cause is improper construction and the only damage is to the work performed by the contractor. Whether coverage for such an "occurrence" is excluded by the work, product or other exclusion is a separate, very important inquiry.... On the other hand, the mere existence of a construction defect does not trigger coverage under an "occurrence" basis policy; coverage is triggered only if the defect causes property damage during the policy term.

Thus, Fluor avers that the petition alleges damages that satisfy the definition of an occurrence because it states that the work performed by the defendants resulted in erosion and a lowered property base, which is property damage that was unexpected. Fluor also rejects Gray's assertion that Fluor's actions were intentional because the Fifth Circuit has held that an occurrence happens where the resulting injury was unexpected, even if the policyholder's acts were intentional. *Hartford Cas. Co. v. Cruse*, 938 F.2d 601, 604-05 (5th Cir. 1991).

In *Hartford*, the Fifth Circuit noted that "a comprehensive general liability policy does not cover the cost of doing business," but "the requisite accident may inhere in the scope of damages." *Id.* at 605. Further, "[w]hile liability policies are not performance bonds, 'defective workmanship or the incorporation of defective materials' are considered 'accidents' and, thus, 'occurrences,' when they result in related property damage." *Markel Am. Ins. Co. v. Schubert's Marine E., Inc.*, 04-376, 2007 WL 54808, *3 (E.D. La. 01/05/2007). The *Markel* court addressed an occurrence clause that is identical to the occurrence clause in Group's primary policy. *Id.* Further, the court found that an occurrence triggered coverage where the subcontractor failed to dry the hull of a vessel, which

caused wrinkles and warping of the vessel, rendering it a constructive total loss. *Id.* Although the subcontractor did perform defective work, the work in turn caused property damage that constituted an occurrence and triggered coverage. *Id.*

Similarly, Grand Acadian does not just allege that the defendants performed defective work, but also alleges significant property damage arising from construction defects, such as erosion and an unstable surface. Accordingly, based on applicable Fifth Circuit and Louisiana state jurisprudence, the four corners of the Gray insurance policy, and the four corners of the petition, this Court finds an "occurrence" under the primary policy.

This Court also finds an occurrence the excess policy. Although the language in the excess policy is not identical to that contained in the primary policy, the definition is substantially similar. Bolstering this conclusion is *Continental Graphics Services, Inc. v. Hanover Louisiana, Inc.*, where the Louisiana Fifth Circuit found that policy language defining an occurrence as an accident that must result "in bodily injury or property damage neither expected nor intended from the standpoint of the insured," which is essentially the language of Group's excess policy, as substantially similar to a policy defining an occurrence as "an accident, including continuous or related exposure to substantially the same general harmful conditions," which is verbatim the definition of occurrence contained in Group's primary policy. 96-78 (La. App. 5 Cir. 05/28/1996); 675 So.2d 1195, 1198 n.1. Thus, this Court construes both occurrence clauses in the same manner and finds an occurrence has triggered coverage under both policies unless an exclusion applies.

### 3.) Whether exclusions 2(j)(5) and (6) bar coverage

Gray argues that Fluor's claims are excluded by 2(j)(5) and (6). The relevant policy provisions state:

14

2. Exclusions

> This insurance does not apply to:

> J. "Property damage" to
>> (5)    That particular part or real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations. If the "property damage" arises out of these operations; or
>> (6)    That particular part of any property that must be restored, repaired, or replaced because "your work"[35] was incorrectly performed on it.[36]

There is an exception for exclusion (j)(6) for property damage in the products-completed operations hazard (hereinafter "PCOH"). 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 195 (3d ed.). This exception provides:

> 11.a. "Products-completed operations hazard" includes all bodily injury and property damage occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>> (1) Products that are still in your physical possession; or
>> (2) Work that has not yet been completed or abandoned.

> 11(b) Your work will be deemed completed at the earliest of the following times:
>> (1) When all of the work called for in your contract has been completed.
>> (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
>> (3) When that part of the work done at a job site has been put

---

[35] The Policy defines "your work" in the Definitions section as "15. Your work means: (a) work or operations performed by you or on your behalf; and (b) materials, parts or equipment furnished in connection with such work or operations." Gray Ex. 0106.

[36] Paragraph (j)(6) does not apply to "property damage" included in the "products-completed operations hazard."

to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.[37]

The Louisiana Supreme Court recently noted that "[e]xclusions (2)(j)(5) and (6) apply while the insured's work is in progress, i.e., the work is not yet complete." *Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 05/22/2007); 958 So.2d 634, 641; *see also* 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 198 (3d ed.) ("[e]xclusion (j)(5) applies while work is in progress...(j)(6) is applicable before the work is complete (as determined by the definition of the 'products-completed operations hazard'").

Exclusion j(5)

Gray argues that exclusion (2)(j)(5) bars coverage because the policy clearly excludes coverage of faulty workmanship performed by, or on behalf of, the contractor. Fluor argues that exclusion (2)(j)(5) does not bar coverage because the property damage occurred after work was complete, and the exclusion only applies to damages occurring while the work is in progress. Fluor argues that work was completed on January 30, 2006 when FEMA halted work and cancelled the project shortly after, on February 15, 2006.

On January 28, 2009, the Fifth Circuit rendered an opinion that considered the phrase "are performing operations" in (j)(5). *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, — F.3d —, 2009 WL 189886, *4 (5th Cir. 01/28/2009). Although the Fifth Circuit applied Texas law in *Mid-Continent*,

---

[37] Gray's Ex. 0105 [doc. 144-8].

this Court nevertheless finds the case instructive because Texas, like Louisiana, applies the "eight-corners rule" when determining whether the liability insurer has a duty to defend and indemnify, and because the language in (j)(5) of the policy considered in *Mid-Continent* is identical to (j)(5) of the Policy. *See id.*

Noting first that "the use of the present tense 'are performing operations' in exclusion j(5) makes clear that the exclusion only applies to property damage that occurred during the performance of construction operations," the Fifth Circuit then considered whether the contractor was "performing operations" when the damage, which was water intrusion, occurred. *Id.* The party seeking indemnification argued that the contractor was not "performing operations" because construction operations "had been suspended and were not actively occurring over the period of time during which the water intrusion occurred." *Id.* The liability insurer argued that the contractor was "performing operations" because the project had not yet been completed as four units were unfinished. *Id.*

Finding that the ordinary meaning of "performing operations" is "the active performance of work," the Fifth Circuit found that:

> [t]he prolonged, open-ended, and complete suspension of construction activities pending the purchase of condominium units does not fall within the ordinary meaning of 'performing operations.' This was not merely a brief, temporary halt, such as that which might occur at the conclusion of each workday or during several days if inclement weather, but rather a total cessation of active construction work for the foreseeable future.

*Id.*

Similarly, examining the four corners of the petition, Grand Acadian alleges that at least

17

some of the property damage—such as the erosion—occurred after operations totally ceased in early 2006 when FEMA cancelled the contract. Accordingly, 2(j)(5) does not bar coverage.

Exclusion j(6)

Gray argues that "Grand Acadian's claims for the cost of restoring, repairing and/or replacing the alleged damage to its property are unambiguously excluded by exclusion 2(j)(6)."[38] Gray concludes that the PCOH exception to exclusion 2(j)(6) does not apply because the work was never completed.

Fluor maintains that exclusion 2(j)(6) does not apply because the work was completed when the alleged property damage occurred and therefore the Policy should provide coverage under the PCOH. Fluor argues that FEMA's cancellation of the contract altered the work required by contract, and Fluor, Honore, and Group did not have the opportunity to finish the work as originally contemplated by contract. Fluor also argues that the PCOH was triggered because the project was "abandoned" after FEMA cancelled the contract.

At the outset, this Court concludes that, pursuant to the unambiguous policy terms, Fluor's work was not completed. The first and second exceptions clearly do not apply because Fluor did not perform the work called for in the contract. The petition states that "FEMA entered into a specific contract with Fluor to develop a mobile home park on the FEMA-West-Half." Further, the third exception also does not apply because "part of the work done at a job site" was not "put to its intended use by any person or organization other than another contractor or subcontractor working on the same project." The purpose of the contract was to build a mobile home park, and the complaint states that the job site was left as a "mud hole" and remains in the same condition today.

---

[38] Gray's Mem. in Support of Mot. for Summ. J., at 16.

This conclusion is further supported by the Louisiana Fifth Circuit's consideration of whether work was "complete" in *Vintage Contracting*, finding that even though the concrete slab was completed, work was not complete because the project called for construction of an entire residence.[39] Although FEMA terminated the work, the work here was not completed because the work required was the construction of a mobile home park.

This Court does find, however, that the PCOH was triggered because the project was "abandoned." *See, e.g., Gottsegen v. Hart Prop. Mgmt., Inc.*, 02-129 (La. App. 5 Cir. 05/29/2002); 820 So.2d 1138, 1141-42. In *Gottsegen*, the court found that work on a pitched roof was "abandoned" when the contractors ceased working after the Parish halted the job because the proper permits were not obtained. *Id.* at 1139, 1142. Interpreting a PCOH clause identical to the one in the Policy, the court concluded that because the work was abandoned and the damage occurred after the job was halted, the damage was covered under the PCOH. *Id.* at 1142.

Similarly, this Court finds that the project was "abandoned" when FEMA halted operations.

---

[39] In *Vintage*, an individual contracted with Vintage to build a new home. *Vintage Contracting, LLC v. Dixie Building Material Co., Inc.*, 03-422 (La. App. 5 Cir. 09/16/2003); 858 So.2d 22, 24. Vintage then contracted with Dixie Building Material, Inc. to construct the concrete slab for the home. *Id.* The slab did not conform to contract specifications and had to be removed and replaced at a substantial cost to the individual. *Id.* at 25. Vintage made a claim against Dixie and also against Maryland Casualty for coverage under its GCL policy. *Id.*

The court considered whether the work product exclusion applied. *Id.* at 29-30. Specifically, the court considered whether the work was "complete" or whether part of the work was put to its intended use by someone other than another contractor or subcontractor working on the same project, as "complete" was defined in the policy, such that the work product exclusion would not apply. *Id.* at 30. The court rejected Dixie's argument that its work was complete because the slab was a separate part of the residence that was completed and put to its intended use when the damages were discovered, reasoning that the "work required" was the construction of the entire residence, and "completion of the slab does not amount to completion of the work called for in the construction contract. *Id.* at 30.

Because the project was abandoned, and at least some of the damage Grand Acadian alleges occurred after FEMA halted operations, this Court concludes that some of the damage is covered under the PCOH.

### 4.) Whether the impaired property exclusion applies

Lastly, Gray argues that the "impaired property" exclusion also bars coverage. This provision excludes:

> M. "Property damage" to "impaired property"[40] or property that has not been physically injured, arising out of:
> > (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or
> > (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to loss of use of other property resulting from the sudden and accidental physical injury to "your product" or "your work" after it has been put to use."

Specifically, Gray argues that the impaired property exclusion bars coverage for Grand Acadian's allegations of incidental damages to the Grand-East-Half, lost infrastructure and

---

[40] The Policy defines "impaired property" as:
> "tangible property, other than 'your product' or 'your work' that cannot be used or is less useful because:
> > (a) it incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or
> > (b) you have failed to fulfill the terms of a contract or agreement;"
>
> if such property can be restored to use by:
>
> > (a) the repair, replacement, adjustment or removal of 'your product' or 'your work;' or
> > (b) your fulfilling the terms of the contract or agreement.

improvements on the FEMA-West-Half, and loss of past and future income on the entire tract because Grand Acadian seeks damages for "loss of use" of property that was physically injured (in the case of the FEMA-West-Half) and property that was not physically injured.

Fluor argues the impaired property exclusion does not apply. Citing *Gaylord Chemical Corporation v. Propump, Inc.*, 98-2367 (La. App. 1 Cir. 02/18/2000); 753 So.2d 349, 355, Fluor argues that because there was physical damage to tangible property, the exclusion does not apply. Relying on this Court's decision in *Fontenot v. One Beacon America Insurance Company*, Fluor argues that Grand Acadian fails to adequately allege how the damages to the Grand-East-Half arose, thus making those allegations ambiguous and triggering coverage. *See* 03-1960, 2005 WL 1788251 (W.D. La. 07/27/2005).

As explained in McKenzie & Johnson, 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 197 (3d ed.), this is known as the "business risk" exclusion, and "the exclusion is not applicable when there is a loss of use due to physical injury to the tangible property." In *Stewart Interior Contractors, LLC v. Metalpro Indus., LLC*, Louisiana's Fourth Circuit noted that the impaired property exclusion, which is identical to the one in Gray's policy, was unambiguous. 2007-0251; 969 So.2d 653, 664 (La. App. 4 Cir. 10/10/2007). Further, "[t]he exclusion precludes coverage for damage to property that has not been physically injured or for which only loss of use is sought," but does not apply "where there is physical damage to property other than the insured's work or product after the product has been put to its intended use." *Id.*

This Court finds that the impaired property exclusion bars coverage of Grand Acadian's allegations of loss of past and future income and incidental damages to the Grand-East-Half. The impaired property exclusion, however, does not bar coverage of Grand Acadian's claims pertaining

to the FEMA-West-Half, because Grand Acadian alleges physical damage to property other than the insured's work or product. *See North American Treatment Systems, Inc. v. Scottsdale*, 2005-0081; 943 So.2d 429, 445-46 (La. App. 1 Cir. 08/23/2006).

## CONCLUSION

Whether a duty to defend exists is determined by employing the "eight corners" rule. Having considered the complaint and the policies, this Court concludes that there are "facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded," and therefore finds that Gray has a duty to defend because there is at least a single allegation in the petition for which coverage is not unambiguously excluded; accordingly,

IT IS ORDERED that the Motion for Summary Judgment, [doc. 144], filed by Gray Insurance Company, is hereby DENIED.

Lake Charles, Louisiana, this ___9___ day of ___April___, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE