RECEIVED
IN LAKE CHARLES, LA
JUN 11 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GRAND ACADIAN, INC.** | : | **DOCKET NO. 2:07 CV 295** |
| VS. | : | JUDGE MINALDI |
| **FLUOR CORPORATION, ET AL** | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment, filed by Fluor Enterprises, Inc. (hereinafter "FEI") [doc. 174]. Third-party defendant Gray Insurance Company (hereinafter "Gray") filed an Opposition [doc. 185]. Fluor filed a Reply [doc. 192].

## PROCEDURAL HISTORY

On March 16, 2009, FEI requested a summary judgment ruling that "the exclusions relied on by Gray in support of its coverage denial and refusal to defend are not applicable under the facts of this case." On April 9, 2009, this Court denied a motion for summary judgment filed by Gray seeking a ruling that it did not owe a duty to defend FEI based on the eight corner rule.[1] In the twenty-two page ruling, the undersigned considered in great detail the applicability of several of the policy exclusions, and denied Gray's motion because there was at least one allegation in Grand Acadian's petition for which coverage was not unambiguously excluded.[2] The briefs here would ask the Court to consider the applicability of the same policy exclusions that Gray raised in its motion

---

[1] Mem. Ruling (April 9, 2009) [doc. 187].

[2] *Id.*

for summary judgment, [doc. 144], and to the extent that this Court has already concluded that these provisions do not bar coverage, FEI's arguments are moot. Whether FEI is covered under the Policy, however, requires additional analysis.

## RELEVANT FACTS

The following facts were articulated in the April 9, 2009 Memorandum Ruling [doc. 187]:

> On January 4, 2006, Honore entered into a subcontract with Group, whereby Group became a primary subcontractor for the Grand Acadian project.[3] The Subcontract, which Honore drafted,[4] refers to the BOA, and erroneously refers to Fluor Enterprises, Inc. as "Flour Contract Management."[5]
>
> The Subcontract required Group to "purchase and maintain insurance that will protect it from the claims arising out of its operations under this Agreement, whether the operations are by the Subcontractor, or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for those acts any of them may be liable."[6] The Subcontract also required Group to name Fluor and Honore as "additional insureds."[7] The Subcontract further required Group to "indemnify, hold harmless and defend Contractor, Contractor's subcontractors, Owner...." from any or all claims, suits...resulting from or arising out of the Work or Subcontractor's failure to comply with the terms or obligations of this Agreement or the Prime Contract Documents...."[8]

---

[3] FEI's Ex. B-2.

[4] FEI's Ex. B (Dexter Honore Aff.). Mr. Honore's affidavit states that the use of the incorrect Fluor name was nothing more than inadvertence. *Id.*

[5] FEI's Ex. B-2.

[6] *Id.* at 6.

[7] *Id.* at 7.

[8] *Id.*

2

The BOA between FEI and Honore lists "Fluor Enterprises, Inc." as the signing entity.[9] John Hartlieb signed for "Fluor Enterprises, Inc.," and his title is listed as "Director, Contract Management."[10] Furthermore, Charles McManemin, a FEI employee, stated in a sworn affidavit that he was employed in the Contract Management Department when the BOA was executed.[11] He further stated that Fluor Contract Management is not a distinct corporate entity, but is a functioning department of FEI that is "charged with the preparation, review, administration, and management of contracts."[12] Dexter Honore, the manager of Dexter Honore Construction Co., LLC, stated in a sworn affidavit that he inadvertently listed FEI as "Flour [sic] Contract Management" in the Subcontract.[13] He also stated that Group was provided with a copy of the BOA prior to the execution of the Subcontract.[14]

## ANALYSIS

In the subcontract, FEI is referred to as "Flour [sic] Contract Management." In its summary judgment motion, Gray argued that this typographical error defeats coverage. This Court disagreed, noting:

> As with other written contracts, Louisiana permits a written insurance contract to be reformed to conform to the original intention of the parties. *Samuels v. State Farm Mut. Ins. Co.*, 06-0034 (La. 10/17/06);

---

[9] FEI Ex. D (BOA) [doc. 150-4].

[10] *Id.*

[11] FEI Ex. A ¶ 2 (McManemin Aff.) [doc. 150-2].

[12] *Id.* ¶ 7.

[13] FEI Ex. B ¶ 7 (Honore Aff.) [doc. 150-3].

[14] *Id.* ¶ 10.

3

939 So.2d 1235, 1240. The party seeking reformation must prove that the instrument had a mutual mistake. *Id.* (noting that the party seeking reformation must prove by a preponderance of the evidence if the reform did not "substantially affect the risk assumed by the insurer"). Parol evidence is admissible to show a mutual error warranting reformation, even absent an ambiguity in the contract. *Id.*[15]

Although Fluor argues that the insurance policy may be reformed to reflect the intention of the parties, it is not the insurance policy that contains the error. The Policy does not specifically list any Fluor entity, but rather states that additional insureds shall be added "when required by written contract." The Policy, therefore, would not be reformed, but rather the Subcontract.

The uncontroverted evidence establishes that "Flour [sic] Contract Management," as appears in the Subcontract, is not a separate legal entity, but is an operational division within Fluor Enterprises. Moreover, Honore provided Group with a copy of the BOA, which correctly names Fluor, prior to executing the Subcontract. Honore drafted the Subcontract and admits it made an error in drafting. The Policy will cover additional insureds as required by written contract. Accordingly, there is sufficient evidence that Group and Honore made a mutual mistake in naming "Flour [sic] Contract Management" instead of Fluor Enterprises, Inc. in the Subcontract such that Fluor Enterprises, Inc. would be an additional insured "required by written contract" pursuant to the Policy. Therefore, this Court concludes that Gray has not met its burden of proving that Fluor is not an additional named insured under the Policy.[16]

---

[15] According to 15 La. Civ. L. Treatise, Insurance Law & Practice § 5 (3d ed.):

Commonly, the mutual error asserted relates not to the printed form of the policy but rather to the persons insured, the property covered, the amount of coverage or the type of coverage purchased. Reformation actions brought on behalf of persons who were not named as insureds in the policy have been successful upon proof that either (1) the agent was aware of the real party at interest when the policy was originally issued and mistakenly issued the policy in another's name...

[16] *Id.* at 10-11.

In the present motion for summary judgment, FEI first argues that Gray impermissibly went outside of the four corners of the policy and examined the Subcontract in an attempt to create an issue of fact as to the entity covered. Alternatively, FEI argues that the Subcontract should be reformed to permit coverage.

Gray filed an opposition before this Court issued its April 9, 2009 ruling, which renders Gray's arguments pertaining to policy exclusions moot. This Court shall consider, however, Gray's arguments on whether FEI is an additional insured and whether reformation is appropriate. Gray argues that because the Subcontract lists "Flour [sic] Contract Management" and not FEI, FEI is not an additional insured. Furthermore, Gray argues that reformation is not appropriate because there is no evidence of mutual mistake.

In the April 9, 2009 ruling, this Court found Gray did not meet its summary judgment burden of showing that FEI was excluded from coverage; however, a motion to reform the underlying Subcontract to list FEI instead of "Flour [sic] Contract Management" was not then before the Court. Because FEI now moves to reform the Subcontract, this matter is appropriately before the Court.

Any coverage for FEI under the Policy would arise under the provision whereby Gray agreed to indemnify Group "for all sums which the Insured shall be obligated to pay by reason of the liability... assumed under contract or agreement by the Named Insured..."[17] Gray does not dispute that the BOA required Honore to have FEI named on the insurance policies of its subcontractors. Gray also does not dispute that the Subcontract between Honore and Group required Group to indemnify "Flour [sic] Contract Management." Gray further notes that Group did this by virtue of

---

[17] Gray Ex. B, p. 11(Excess Policy) [doc. 144].

5

the "Additional Insured, Designated Person or Organization" endorsement to the Policy.[18] This provision modifies Commercial General Liability coverage to provide coverage when "required by written contract, any person, firm or organization."[19]

The Fifth Circuit permitted the use of extrinsic evidence in *Tichenor v. Roman Catholic Church*, 32 F.3d 953, 963 (5th Cir. 1994) to resolve this issue, and accordingly this Court shall too.[20] In *Tichenor*, the Fifth Circuit considered whether USF & G, an insurance company, had a duty to defend an employee, Cinel, of the named insured policyholder, listed as "ARCHDIOCESE OF NEW ORLEANS AND ITS PARISHES AND INSTITUTIONS AND RELIGIOUS ORGANIZATIONS." *Id.* Concluding that the policy was facially clear as to who was a named insured, the court also considered whether the following provision effected coverage: "ADDITIONAL PERSONS INSURED (B) Employee-Any employee (other than executive officers) of the named insured while acting within the scope of his duties as such...." *Id.*

---

[18] Gray Ex. 0071 (Policy) [doc. 144-6].

[19] *Id.*

[20] There appears to be a conflict between the Louisiana intermediate appellate courts and the Fifth Circuit as to whether a court can consider extrinsic evidence to determine whether an insurance company owes a duty to defend an entity that is not a named insured under a policy but may be an additional insured. In *Vaughn v. Franklin*, 785 So.2d 79 (La. App. 4 Cir. 3/21/2008), the Louisiana Fourth Circuit Court of Appeal considered a similar issue. The *Vaughn* court rejected the *Tichenor* court's approach, finding that *Tichenor* conflicted with *American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969), a Louisiana Supreme Court case.

As the Fifth Circuit has noted, "[t]he decision of an intermediate appellate state court guides, but does not necessarily control a federal court's determination of the applicable state law. *Green v. Walker*, 910 F.2d 291, 294 (5th Cir. 1990). *Tichenor* was decided in 1994, well after *Czarniecki*, and accordingly, this Court is bound to follow the Fifth Circuit's articulation of the law in *Tichenor*.

The Fifth Circuit concluded it did not effect coverage because the allegations in the petition went far beyond conduct that would arise within the scope of Cinel's employment, as the plaintiff alleged that Cinel, a former priest, performed illicit sexual acts upon him while he was still a minor. *Id.* at 957.

Cinel objected that the court went beyond the eight corner rule because "Tichenor's allegations that Cinel acted within the scope of his employment are sufficient to trigger the duty to defend." *Id.* at 964. Noting that the eight corner rule is well-settled when the issue is whether an insurance company owes a duty to defend its insured, the Fifth Circuit stated that:

> In the case at hand, as we have explained, the policy upon which Cinel relies is not between him and USF & G, it is between USF & G and the Archdiocese. In this structure, Cinel is a third party beneficiary who receives coverage only when he acts within his duties. We do no violence to the *Jensen* rule in looking beyond the complaint to ascertain whether he was an additional person insured.

*Id.* Accordingly, in determining that Cinel did not act in the scope of his duties, the Fifth Circuit went beyond the eight corner rule and looked at extrinsic evidence such as Cinel's articulation of his job description. *Id.* at 959-60.

Similarly, the Policy in this case is not between FEI and Gray, but is between Group Contractors, LLC, and Gray. Accordingly, this Court shall consider extrinsic evidence in determining whether FEI is entitled to a summary judgment ruling that Gray owes it a duty to defend. FEI must therefore prove that Honore and Group made a mutual error by a preponderance of the evidence. *Samuels*, 939 So.2d at 1240 ("only the normal burden of proof by a preponderance of the evidence was required to reform a policy in a manner which did not substantially affect the risk

7

assumed by the insurer").[21]

In *Samuels,* the Louisiana Supreme Court reformed a clerical error in an insurance contract. 939 So.2d at 1240-41. A homeowner purchased a State Farm general umbrella policy and an Evanston excess policy. *Id.* at 1239. The Evanston employee entered the incorrect number for the underlying State Farm policy in the Evanston policy, which prompted State Farm to argue that Evanston was equally responsible. *Id.* In rejecting State Farm's argument and reforming the contract, the Louisiana Supreme Court noted:

> In the case of mutual error, an insurance contract may be reformed to reflect the intent of the parties. Where, as here, the insurance agent has made a clerical error on the declarations page of an insurance policy as to the identity of certain underlying insurance policies, that clerical error will be corrected to reflect the clear intent of the parties. There are simply no rules of contractual interpretation that would lead us to ignore the clear intent of the parties to the fortuitous benefit of a third party insurance company who did not even rely on this error in issuing its own policy.

*Id.* at 1241.

The Fifth Circuit recently considered and distinguished *Samuels* in *American Electric Power Company v. Affiliated FM Insurance Company,* 556 F.3d 282 (5th Cir. 2009), a case that merits discussion here. The *American Electric* court considered whether the district court erred in refusing to reform an insurance contract that expressly covered CSW[22] and any subsidiary corporation..." to

---

[21] A party seeking reformation that would provide coverage for a "substantially different and greater risk" than what is covered must prove a mutual error by clear and convincing evidence. *Samuels,* 939 So.2d at 1240. Gray's risk of insurance is not altered by which entity is named in the Subcontract, and thus the more stringent burden of proof does not apply.

[22] The plaintiff, American Electric Power Company (hereinafter "AEP") acquired CSW. *Id.* at 284. AEP's insurer, Affiliated, issued an amended policy to include CSW and its

8

include LLCs. *Id.* at 285. The parties to the original policy, CSW and Chubb Insurance Group, both submitted affidavits stating they mutually intended for LLCs to be included within the term corporation. *Id.*

The Fifth Circuit rejected that argument and found that Affiliated, who was not a party to the original agreement, had no knowledge of the error when it assumed liability through the Affiliated policy. *Id.* at 287. Furthermore, the Fifth Circuit noted two dispositive distinctions between the case before it and *Samuels*: 1) *Samuels* involved a third party who did not rely on the original contract, whereas Affiliated relied on the meaning of corporation, and 2) *Samuels* involved an "obvious clerical mistake that lead to the inclusion of an unintended and inaccurate policy number," whereas the use of the word "corporation" is not an error for which reformation is intended. *Id.* at 288 (noting that in *Samuels*, the court permitted reformation rather than to allow State Farm to receive an unintended windfall).

This Court finds the error in the Subcontract analogous to the error in *Samuels*, because there is no indication that Gray relied on the naming of "Flour [sic] Contract Management" as the insured party, and because the inclusion of "Flour [sic] Contract Management" rather than FEI is an obvious clerical mistake. Group and Honore made a mutual clerical mistake by naming "Flour [sic] Contract Management" in the Subcontract instead of FEI in the Subcontract. Flour [sic] Contract Management is a division of FEI and not a separate legal entity. The BOA, which Group received prior to signing the Subcontract, clearly lists FEI as the Contractor. Moreover, the Subcontract refers to the BOA, which gives further support that both signing parties erroneously listed "Flour [sic] Contract Management" as the general contractor. This conclusion is further bolstered by the fact that

---

subsidiaries as covered subsidiaries of AEP. *Id.*

9

Grand Acadian is no longer suing Fluor Contract Management because that entity was deleted as a defendant in the first supplemental and amending complaint filed on June 20, 2008 [doc. 108]. Without reformation, Gray would receive an unintended windfall.

## CONCLUSION

This Court finds that FEI has proven by a preponderance of the evidence that Honore and Group made a mutual mistake by naming "Flour [sic] Contract Management" instead of FEI in the Subcontract; accordingly,

IT IS ORDERED that the Motion for Summary Judgment, [doc. 174], is hereby GRANTED. The Subcontract is hereby REFORMED to list Fluor Enterprises, Inc. rather than Flour Contract Management. Gray has a duty to defend FEI in the *Grand Acadian* litigation.

Lake Charles, Louisiana, this 29 day of May, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE