RECEIVED
IN LAKE CHARLES, LA.

FEB 10 2010

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GRAND ACADIAN, INC. | : | DOCKET NO. 2:07 CV 295 |
| VS. | : | JUDGE MINALDI |
| FLUOR CORPORATION, et al | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the Affirmative Defenses of

Release and Intervening/Superseding Cause, filed by defendants Fluor Enterprises, Inc. and Plant

Performance Services, LLC ("Fluor") [doc. 246].[1]  The plaintiff, Grand Acadian, Inc. ("Grand"),

filed an Opposition to the factual summary in Fluor's Motion [doc. 283].  Grand filed an Opposition

to Fluor's Motion that also serves as a Motion for Partial Summary Judgment on the issue of

intervening/superseding cause [doc. 259].  Grand filed a second Opposition to Fluor's Motion that

also serves as a Motion for Partial Summary Judgment on the issue of release [doc. 260].  Fluor filed

a Reply that pertains specifically to the issue of intervening/superseding cause [doc. 280].

In response to Grand's Motion for Partial Summary Judgment on Intervening/Superseding

Cause, [doc. 259], Fluor filed an Opposition [doc. 279].  Grand filed a Reply [doc. 307].  In response

to Grand's Motion for Partial Summary Judgment on the Defense of Release, [doc. 260], Fluor filed

---

[1] Fluor Corporation; American Equipment Company, Inc.; Fluor Federal Services, Inc.;
Fluor Government Group International, Inc.; Fluor Management Co., LP; TRS Staffing
Solutions, Inc.; and P2S, LLC also joined in this motion, but have since been dismissed from this
lawsuit.  *See* Order, [doc. 368], granting Grand's Motion for Dismissal Without Prejudice [doc.
346].

two Oppositions, [docs. 276, 278], and Grand filed a Reply [doc. 304].

FACTS

In December 2004, Grand Acadian, Inc. ("Grand") purchased 60 acres of property in Sulphur, Louisiana ("the Grand Acadian Site").[2]  Grand intended to build and develop an RV park on the property.[3]  In September 2005, following Hurricanes Katrina and Rita, the United States Army Corps of Engineers ("the Corps") and the Federal Emergency Management Agency ("FEMA") identified the Grand Acadian Site as a possible location for construction of a group housing site for displaced hurricane victims.[4]  FEMA had previously awarded a contract to Fluor to assist FEMA in providing temporary housing in the aftermath of natural disasters.[5]

On December 7, 2005, the United States executed an agreement with Grand ("the FEMA Lease") to lease the western 27.4 acres of the Grand Acadian site for use as a FEMA trailer park ("the FEMA Leased Property").[6]  In conjunction with the FEMA Lease, FEMA directed Fluor to construct a FEMA trailer park on the FEMA Leased Property.[7]  Because of the urgent need for temporary housing, Fluor and other contractors needed access to the FEMA Leased Property before final execution of the FEMA Lease.  Thus, on September 16, 2005, Grand granted FEMA, its

---

[2] First Supp. Pet. [doc. 108].

[3] *Id.*

[4] Def.'s Ex. 9, pp. 22, 26-27 (Jarboe Dep.) [doc. 246-31].

[5] Def.'s Ex. 7 (Ashby Decl.) [doc. 246- 8].

[6] Def.'s Ex. 8 (FEMA Lease) [doc. 246-30].

[7] Def.'s Ex. 10, pp. 42-45 (Nadsady Dep.) [doc. 246- 32]; Def.'s Ex. 15 [doc. 246-37].

contractors, and its subcontractors permission to enter the Grand site by signing a Right-of-Entry agreement ("ROE Agreement").[8]

Fluor began construction activities on the FEMA Leased Property in January 2006, and FEMA cancelled the park project by February 2006. Grand alleges that construction was halted because of Fluor's negligent construction practices and increased costs, while Fluor argues that soil conditions on the FEMA Leased Property significantly affected the project costs and schedule. Fluor contends that FEMA cancelled the park project due to the decreasing need for temporary housing. FEMA eventually cancelled the FEMA Lease in December 2006. In late 2007, Grand filed a lawsuit against the United States, alleging FEMA failed to restore the FEMA Leased Property at the end the lease term.[9]

Grand filed suit against Fluor, alleging tort, breach of contract, and detrimental reliance claims.[10] Grand seeks damages for restoration and repair costs, lost infrastructure and improvements, loss of past and future income on the entire Grand Acadian Site, and other damages to be established at trial. Also, while Grand was pursuing lease negotiations for the FEMA Leased Property, Grand began developing the eastern half of the Grand Acadian Site ("the Grand East Half") into a premium RV park. Grand alleges that Fluor's destruction of the FEMA Leased Property effectively destroyed

---

[8] Def.'s Ex. 38 (ROE Agmt.) [doc. 246-60].

[9] The Court of Federal Claims is handling Grand's lawsuit against the United States.

[10] Grand filed suit against several other defendants, all of whom have been dismissed from this lawsuit. *See* Order, [doc. 424], granting Grand's Motion to Dismiss With Prejudice [doc. 407].

3

its ability to develop the Grand East Half, and Grand seeks incidental damages for that negligence.[11] This case is scheduled for a jury trial on March 22, 2010.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

---

[11] First Supp. Pet. [doc. 108].

4

## ANALYSIS

Fluor seeks dismissal of Grand's tort claims, arguing that Grand specifically released all claims against Fluor in the ROE Agreement. Alternatively, Fluor requests summary judgment based on its affirmative defense of intervening/superseding cause. Fluor insists that FEMA's wrongful breach of the FEMA Lease and FEMA's actions prohibiting Fluor from restoring the FEMA Leased Property constitute an intervening/superseding cause, thereby relieving Fluor from any tort liability.

Grand contends that it never released its tort claims against Fluor because the ROE Agreement was not in effect when Fluor allegedly damaged the FEMA Leased Property. Rather, the ROE Agreement had been replaced by the FEMA Lease, which contains no release language. Additionally, Grand argues that FEMA's breach of the lease was not an intervening/superseding cause, and that Fluor's negligence in destroying the dirt was a proximate cause of Grand's damages.

### Issue of Release

Fluor argues that the affirmative defense of release bars all of Grand's tort claims against Fluor, citing the ROE Agreement between FEMA and Grand Acadian. Signed on Grand's behalf by Tom Romero,[12] the agreement provides, in part:

> FEMA and its representatives, employees, contractors and/or subcontractors (hereinafter, the "Government") are hereby granted the right of access and entry to said Property for the purposes stated above, including but not limited to staging equipment and materials, performance of site improvements and maintenance, and any other construction or work necessary for such temporary emergency shelter and temporary housing.[13]

The agreement further states:

---

[12] Romero has been a shareholder, vice president, and member of Grand Acadian, Inc.'s board of directors since November 2004. Def.'s Ex. 37, pp. 28-29 (Romero Dep.) [doc. 246-59].

[13] Def.'s Ex. 38 (ROE Agmt.) [doc. 246-60].

5

The Owner acknowledges that the activities authorized by this Right-of-Entry may cause damage to the Property, to associated personal property and/or to persons situated on the Property. The undersigned agrees to hold the Government harmless for damages or loss of any type whatsoever, either to the above described Property, any other real or personal property, or to persons situated thereon, and hereby releases, discharges, and waives any and all actions, either legal or equitable, which the Owner and his authorized representative, if any, has or may have arising out of this Right-of-Entry and/or any activities of the Government on the Property.[14]

Fluor contends that the ROE Agreement releases and waives Grand's potential tort claims because Fluor is considered the "Government" for purposes of the agreement. Further, Fluor argues that the agreement's plain language clearly and unequivocally demonstrates Grand's intent to discharge FEMA, its contractors, and subcontractors from all tort claims arising out of any activities on the FEMA Leased Property.

Fluor argues that the FEMA Lease between the United States and Grand, to which Fluor was not a party, has no effect on Grand's release of its tort claims in the original ROE Agreement. Fluor notes that the FEMA Lease and the ROE Agreement are two separate agreements, and Fluor avers that the FEMA Lease's only effect is establishment of FEMA's separate contractual (non-tort) obligation to improve or restore the FEMA Leased Property. Fluor insists that potential tort claims against Fluor remain released under the FEMA Lease.

Additionally, Fluor argues that it is a third party beneficiary to the ROE Agreement, noting that Louisiana law does not require that a third party beneficiary be named specifically in the contract. Fluor contends that it meets the criteria for determining whether the contracting parties provided a benefit for Fluor; namely, that (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided to the third party; and (3) the benefit is not a mere

---

[14] *Id.*

6

incident of the contract between the promisor and the promisee.[15]  Fluor argues that as a third party

beneficiary, it accepted the benefits of the ROE Agreement.  Therefore, the agreement cannot be

revoked without Fluor's consent.  Fluor adds that even if the ROE Agreement was revoked, that

alleged revocation does not affect Fluor.

Grand argues that FEMA and its contractors, including Fluor, are not released from any

potential tort liability because the ROE Agreement applied only during the inspection period and not

during the lease term.  When Grand signed the ROE Agreement on September 16, 2005, FEMA and

Grand were in the process of drafting the FEMA Lease.[16]  The FEMA Lease became effective on

December 7, 2005,[17] and Fluor began construction activities on the site in January 2006; thus,

Fluor's alleged damage to the Grand property occurred after the FEMA Lease went into effect.[18]

Grand argues that the FEMA Lease superseded or replaced the original ROE Agreement.

Grand points to the FEMA Lease provision that explains that FEMA and its contractors' and

subcontractors' rights for "entry, occupation, usage and other rights," would be governed by the lease

agreement.[19]  Grand also notes that the FEMA Lease contained an "Integrated Agreement" clause

that states "[t]his lease, upon execution, contains the entire agreement of the parties and no prior

---

[15] *Joseph v. Hosp. Svce Dist. No. 2*, 939 So. 2d 1206, 1212 (La. 2006).

[16] "Whereas, the preparation and documentation process...of a lease agreement or usage agreement is in progress..." Def.'s Ex. 38 (ROE Agmt.) [doc. 246-60].

[17] Def.'s Ex. 8, Lease Rider, ¶ 5 (FEMA Lease) [doc. 246-30].

[18] Grand has not accused Fluor of damaging the property before January 7, 2006.  First Supp. Pet. [doc. 108].

[19] Def.'s Ex. 8, Lease Rider, ¶ 1 (FEMA Lease) [doc. 246-30].

7

written or oral agreement, express or implied, shall be admissible to contradict the provisions of the [l]ease."[20]

Grand argues that not only was the ROE Agreement and its release language completely omitted from the FEMA Lease, but it was replaced by a new right-of-entry provision totally devoid of any "hold harmless" or release language.[21] Grand notes that nowhere in the FEMA Lease did the parties include a provision releasing FEMA or its private contractors for damages that may occur during the lease term. Instead, the FEMA Lease contained a specific provision obligating FEMA to leave the FEMA Leased Property improved or restored at the end of the lease.[22]

Grand cites the Court of Federal Claims recent finding that the FEMA Lease is a fully integrated agreement.[23] Holding that the ROE did not apply, the Court stated that the new "right of entry" provision in the lease, which lacks any release language, is evidence that "the parties did not intend the previously created Right of Entry Agreement to have any effect upon the terms of the Lease."[24] The Court also concluded that the release provision in the ROE Agreement "is not consistent with the duty to restore required by the [subsequent] lease."

Finally, Grand argues that even if Fluor is a third party beneficiary to the ROE Agreement, Fluor has not shown that the agreement was revoked, or even revoked without consent. Instead, Grand argues that the ROE Agreement expired when the FEMA Lease was executed, because the

---

[20] Def.'s Ex. 8 (FEMA Lease) [doc. 246-30].

[21] Def.'s Ex. 8, Lease Rider, ¶ 7 (FEMA Lease) [doc. 246-30].

[22] Def.'s Ex. 8, Lease Rider, ¶ 6 (FEMA Lease) [doc. 246-30].

[23] *Grand Acadian v. United States*, 87 Fed.Cl. 193 (Fed.Cl. 2009).

[24] *Id.* at 209.

8

ROE Agreement simply allowed FEMA, its contractors, and its subcontractors to enter Grand's property "prior to execution" of the lease. Consequently, once the parties executed the lease agreement, the ROE Agreement was no longer necessary and expired by its own terms.

"It is well settled that contracts to which the government is a party...are normally governed by federal law, not by the law of the state where they are made or performed." *Durieko v. United States*, 209 F.3d 1345, 1356 (Fed. Cir. 2000) (internal citations omitted). The United States is a party to the release in this case; therefore, federal common law governs interpretation of the subject release agreement.

Under federal common law, a release's effect on unnamed parties "shall be determined in accordance with the intentions of the parties." *Thompson v. United Transportation Union*, 2000 WL 1929963 *5 (D. Kan. 2000) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971)). "[W]here a contract is complete and unambiguous, its plain language is the 'only legitimate evidence of the parties' intent.'" *Thompson*, at *5.

An integrated agreement is one that contains within its four corners the entire agreement of the parties. *Black's Law Dictionary, Sixth Edition*. When a document is completely integrated, no additional items may be added through parol evidence, whether those items are consistent or inconsistent. *Grand Acadian, Inc. v. United States*, 87 Fed.Cl. 193, 209 (Fed.Cl. 2009) (citing *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1328 (Fed.Cir. 2003)). Attempting to add terms to a contract with an integration clause "carries an extremely heavy burden" in overcoming the document's finality and completeness. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir. 1996) (citing *Campbell v. United States*, 228 Ct.Cl. 661, 676 (Ct.Cl. 1981)).

In *McAbee*, the easement agreement at issue contained an integration clause explicitly stating that it was a fully integrated agreement and that all of the terms and conditions were "expressly contained" within the four corners of the easement. *McAbee*, 97 F.3d at 1434. The Court held that the parties had a fully integrated agreement; therefore, the parol evidence rule prohibited use of extrinsic evidence to add or modify its terms. *Id.*

In the present case, there are no material issues of fact disputing that Grand did not release any potential tort claims against Fluor. As stated in the ROE Agreement, the document's purpose was to allow Fluor and other entities onto the property for inspection "prior to execution of the lease." Further, the parties could have incorporated the ROE Agreement into the FEMA Lease, but any reference to a release or the ROE Agreement was omitted from the four corners of the lease. Finally, the integration clause clearly prohibits the use of extrinsic evidence, including the ROE Agreement.

This Court does not even reach the issue of whether Fluor is a third party beneficiary to the ROE Agreement because the agreement was not revoked. As previously stated, the ROE Agreement was a temporary document intended to govern FEMA's use of the property until Grand and FEMA confected the formal lease agreement on December 7, 2005.

There is no genuine issue of material fact that the ROE Agreement does not release Fluor from any potential liability for its alleged tortious conduct during the lease term; accordingly, the portion of Fluor's Partial Motion for Summary Judgment regarding its release defense is DENIED, and Grand's Partial Motion for Summary Judgment regarding release is GRANTED.

**Intervening/Superseding Cause**

Fluor argues that FEMA's breach of the FEMA Lease was an intervening/superseding cause of Grand's alleged tort damages, and FEMA is solely responsible for Grand's losses.

Fluor cites documents from Grand's lawsuit against the United States and deposition testimony to highlight FEMA's contractual obligation to restore the FEMA Leased Property. In its lawsuit against the United States, Grand alleged that FEMA's refusal to restore the FEMA Leased Property to its original condition constituted a breach of contract.[25] In a summary judgment motion filed against the United States, Grand argued that "it is clear that the government had a duty to restore the site at the conclusion of the lease term."[26] Fluor also cites the Court of Federal Claims' ruling that the United States had a contractual duty to restore the FEMA Leased Property to pre-lease conditions.[27] Fluor also includes the testimony of Pat McConnaughhay, who admitted in both individual and corporate depositions, that Grand would have suffered no damage in this case if the United States would not have breached its contractual obligation under the FEMA Lease to restore the FEMA Leased Property to its original condition.[28]

Fluor points out that FEMA had absolute control over the work to be done on the FEMA Leased Property and argues that FEMA's refusal to authorize any restoration work is the cause of Grand's alleged damages. FEMA directed Fluor to demobilize from the FEMA Leased Property and

---

[25] Def.'s Ex. 36 [doc. 246-58].

[26] Def.'s Ex. 30 [doc. 246-52].

[27] *Grand Acadian*, 87 Fed.Cl. at 217-218.

[28] Def.'s Ex. 4, pp. 304-305 (McConnaughhay Dep.) [doc. 246-5]; Def.'s Ex. 3, pp. 201-202 (Grand Dep.) [doc. 246-4].

solicit bids for any restoration work.[29]  Fluor points out that it solicited bids, but FEMA prohibited Fluor from actually performing any of the restoration work.[30]  Thus, FEMA's independent action of breaching the lease and prohibiting Fluor from performing restoration work, which occurred after Fluor's alleged negligence, is the cause of Grand's damages.

Fluor also argues that FEMA cancelled the project because the need for temporary housing ceased, not because of the additional soil replacement costs.  Fluor submits deposition testimony of Ramona Van Cleve ("Van Cleve"), an employee at FEMA's Lake Charles Area Field Office who was responsible for tracking housing demand in the Lake Charles area.[31]  Van Cleve testified that if FEMA had needed a trailer park at the Grand Acadian Site, it would have built the park, notwithstanding the necessary costs to stay on schedule.[32]

Finally, Fluor argues that FEMA had a contractual right to cancel construction of the park, and FEMA's refusal to restore the FEMA Leased Property to its original condition was the intervening cause of Grand's damages.  Fluor contends that it is not responsible for FEMA's decision to exercise its valid right under the contract with Grand to cancel the park project.

Grand seeks dismissal of Fluor's intervening/superseding cause defense, questioning whether intervening/superseding cause is a viable concept.[33]  Grand argues that Fluor's negligent construction

---

[29] Def.'s Ex. 32 [doc. 246-54]; Def.'s Ex. 10, pp. 63-65 (Nadsady Dep.) [doc. 246-32].

[30] Def.'s Ex 10, p. 60 (Nadsady Dep.) [doc. 246-32]; Def.'s Exs. 16, 31, 33, 34 [docs. 246-38, 53, 55, 56].

[31] Def.'s Ex. 31, p. 16 (Van Cleve Dep.) [doc. 246-54].

[32] *Id.* at pp. 36-37.

[33] Grand cites Alton Johnson's treatise on civil jury instructions, in which Johnston states: "it is uncertain how much of this concept [of superceding negligence] remains viable in the days

12

practices on the FEMA Leased Property were the proximate cause of Grand's damages. Grand insists that Fluor failed to drain the property, destroyed the soil, and made the project too costly to continue, causing FEMA to cancel the project and the FEMA Lease.

Fluor contacted FEMA on January 21, 2006, requesting an additional $2.8 million to replace the soil and continue construction.[34] On February 11, 2006, FEMA official Tom Nadsady ("Nadsady") issued a "stop work" order, cancelling the project "due to increased cost above original estimate."[35] Grand insists that FEMA's refusal to pay for the additional project costs did not constitute an intervening/superseding cause because the refusal did not break the natural and continuous sequence of Fluor's negligence; rather, Grand suggests it was a continuation of Fluor's negligence.

Finally, Grand disputes Fluor's contention that FEMA cancelled the park because the need for housing diminished, and submits Van Cleve's testimony that the project was stopped "by someone higher up."[36]

When an accident results from two negligent acts, "one more remote and one an intervening cause, the presence of the intervening cause prevents a finding of liability on the one responsible for the more remote cause." *Pickett v. RTS Helicopter*, 128 F.3d 925, 929 (5th Cir. 1997). An "intervening cause" occurs when something happens to "break[] the 'natural and continuous sequence' of events flowing from the [original act]." *Id.* Such a cause "comes into play after the

---

of the modern duty/risk analysis." 18 La.Civ.L. Treatise, Civil Jury Inst. § 3.25 (2d ed).

[34] Pl.'s Ex. 261 [doc. 283-15].

[35] Pl.'s Ex. 262 [doc. 283-16].

[36] Def.'s Ex. 31, pp. 36-37 (Van Cleve Dep.) [doc. 246-54].

13

defendant's negligent conduct has ceased, but before the plaintiff suffers injury." *Adams v. Rhodia, Inc.*, 983 So. 2d 798, 808 (La. 2008).

Under the doctrine of superseding cause, "a tortfeasor is not liable for damages brought about by a later, separate, independent cause, even though the tortfeasor's conduct may have created the original peril." *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, 113 F.Supp.2d 987, 998 (E.D. La. 2000). This principle is applied when a defendant's negligence substantially contributes to the plaintiff's injury, "but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* at 988.

A proximate cause is "[a]ny cause which, in natural and continuous sequence, unbroken by any efficient, intervening sequence, produces the result complained of and without which the result would not have occurred. *Pickett*, 128 F.3d at 929.

Fluor and Grand have each submitted sufficient evidence demonstrating genuine issues of material fact regarding the cause of Grand's alleged damages. There are disputed issues of fact regarding whether the original cause (Fluor's negligent construction practices) produced Grand's damages in a natural and continuous sequence, or whether FEMA's breach of the lease is so far removed from Fluor's negligence as to break the causal connection and relieve Fluor of all liability. These issues of fact are central to this litigation, and it will be for the trier of fact to decide the cause of Grand's damages and the extent of Fluor's liability. Accordingly, the portion of Fluor's Motion for Partial Summary Judgment regarding intervening/superseding cause is DENIED, and Grand's Motion for Partial Summary Judgment is DENIED.

IT IS ORDERED that Fluor's Motion for Partial Summary Judgment, [doc. 246], is hereby DENIED.

14

IT IS FURTHER ORDERED that Grand's Motion for Partial Summary Judgment, [doc. 259], is hereby DENIED, and Grand's Motion for Partial Summary Judgment, [doc. 260], is hereby GRANTED.

Lake Charles, Louisiana, this __10__ day of February, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE