RECEIVED
IN LAKE CHARLES, LA.

FEB 18 2010

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GRAND ACADIAN, INC. | : | DOCKET NO. 2:07 CV 295 |
| VS. | : | JUDGE MINALDI |
| FLUOR CORPORATION, et al | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on the Merits of Grand Acadian's Oral Contract and Detrimental Reliance Claims, filed by defendants Fluor Enterprises, Inc. and Plant Performance Services, LLC ("Fluor") [doc. 248].[1] The plaintiff, Grand Acadian, Inc. ("Grand"), filed an Opposition [doc. 269].  Fluor filed a Reply [doc. 303].

### FACTS

This Court presented most of the underlying facts in a previous Memorandum Ruling on Fluor's Defenses of Release and Intervening/Superseding Cause and now provides the necessary additional facts.

In an effort to persuade Grand to lease the FEMA Leased Property to FEMA, Grand argues that Fluor employee Scott Wiley ("Wiley") emailed Pat McConnaughhay ("McConnaughhay") the

---

[1] Fluor Corporation; American Equipment Company, Inc.; Fluor Federal Services, Inc.; Fluor Government Group International, Inc.; Fluor Management Co., LP; TRS Staffing Solutions, Inc.; and P2S, LLC also joined in this motion, but have since been dismissed from this lawsuit.  *See* Order, [doc. 368], granting Grand's Motion for Dismissal Without Prejudice [doc. 346].

1

engineering drawings and plans that Fluor prepared for FEMA.[2]  Grand then alleges that Wiley told McConnaughhay that the infrastructure improvement that Fluor would develop on the FEMA Leased Property would cost approximately $10 million, and that Grand could keep the improvements at no cost when the FEMA Lease expired.[3]  Grand contends that Wiley and McConnaughhay came to an oral agreement that Fluor would build the park as described on the plans and drawings, and, in return, Grand would lease the FEMA Leased Property to FEMA.[4]  Grand now seeks damages for Fluor's alleged breach of the parties' oral contract and, alternatively, damages for detrimental reliance.  A jury trial is scheduled for March 22, 2010.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).  "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323).  "If the moving party fails to meet this initial burden,

---

[2] Second Supp. Pet. [doc. 118].

[3] Second Supp. Pet. [doc. 118].

[4] Second Supp. Pet. [doc. 118].

2

the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

Fluor seeks dismissal of Grand's oral contract claim because Grand lacks the requisite corroborating evidence to prove existence of the alleged oral contract. Alternatively, Fluor argues that if such a contract exists, Grand's contract claim should be dismissed because Fluor's performance was conditioned upon FEMA's obligation to pay, and because Grand made the contract impossible to perform. Fluor argues summary judgment is also appropriate for Grand's detrimental reliance claim because Fluor never promised Grand that it would construct a FEMA trailer park, and alternatively, that such a promise and Grand's representation on that promise were both unreasonable.

Grand contends that it has sufficient evidence to demonstrate existence of the alleged oral contract, and that it reasonably relied upon Fluor's representations concerning construction of the trailer park.

### Oral Contract Claim

Fluor contends that Grand cannot prove the essential elements of its oral contract claim. Fluor argues that Grand cannot present a credible witness to establish the contract's existence and

submits McConnaughhay's deposition excerpts to demonstrate the inconsistent and contradictory nature of his testimony.  Fluor points outs that McConnaughhay initially declined to confirm the pleaded elements of the alleged contract, then denied the existence of any promise by Fluor, and then claimed the existence of a direct contract between Fluor and Grand.[5]

Fluor also argues that there is no corroborating evidence- either testimonial or written- to prove the alleged contract's existence.  Fluor notes that other than McConnaughhay's statements, Grand cannot produce corroborating testimony to support its assertion that an oral contract existed between Grand and Fluor.  Fluor attaches McConnaughhay's affidavit from the FEMA lawsuit, wherein he stated several times that he negotiated the FEMA Lease and construction of the infrastructure with FEMA personnel.[6]

Fluor produces McConnaughhay's own timeline to highlight his admission that Wiley communicated with him at FEMA's direction and submits an email written by McConnaughhay, in which McConnaughhay admitted that "all the plans were sent to us by Fluor at the request of the Government, for us to review..."[7] McConnaughhay also testified that FEMA, not Fluor, was "trying to induce Grand Acadian to enter into a lease with FEMA with the promise of infrastructure at the end of the lease."[8] Fluor also submits Wiley's testimony to confirm that Wiley did not "deal" with McConnaughhay, but merely acted as a conduit between Grand and FEMA regarding the trailer park's proposed design.  Wiley recalled sending an email to McConnaughhay "as requested by

---

[5] Def.'s Ex. 43, pp. 223-224, 244, 351-352 (McConnaughhay Dep.) [doc. 248-3].

[6] Def.'s Ex. 44 (McConnaughhay Decl.) [doc. 248-4].

[7] Def.'s Ex. 56 [doc. 248-16]; Def.'s Ex. 57 [doc. 248-17].

[8] Def.'s Ex. 43, pp.373-374 (McConnaughhay Dep.) [doc. 248-3]

FEMA with the design plans for him to review."[9]

Additionally, Fluor notes Grand's allegations that the oral contract is corroborated only by Fluor's submission of trailer park plans to McConnaughhay for review and Grand's execution of the lease with FEMA.[10]  Fluor argues that when it transmitted the site plans to Grand that Fluor was acting as FEMA's contractor under FEMA's direction and instruction.  Likewise, Fluor argues that the FEMA Lease does not corroborate the existence of a separate agreement between Fluor and Grand for construction of infrastructure.  Fluor notes that the FEMA Lease is an agreement between Grand and FEMA for the use and establishment of a FEMA trailer park, and Fluor is not a party to that lease and did not sign the lease.  Further, nothing in the FEMA Lease obligates FEMA to use Fluor to construct the trailer park on the FEMA Leased property.

Fluor highlights the lack of any contemporaneous documents to corroborate the alleged contract, noting that FEMA issued all directives concerning work on the site, and when McConnaughhay complained of Fluor's construction performance he complained to FEMA about "your contractor."  Fluor points to Grand's allegations in its suit against FEMA that "the United States actively negotiated with Grand Acadian to develop infrastructure" and "the United States breached its lease by...its failure to develop and build the infrastructure that would remain on the property at the expiration of the lease term."[11]

Alternatively, Fluor argues that even if Grand and Fluor had an oral contract for Fluor to construct a FEMA trailer park, that Fluor's performance was conditioned upon FEMA's obligation

---

[9] Def.'s Ex. 45, pp. 32-34 (Wiley Dep.) [doc. 248-5].

[10] Def.'s Ex. 43, pp. 352-354 (McConnaughhay Dep.) [doc. 248-3].

[11] Def.'s Ex. 36 (First Amend. Compl. in FEMA Lawsuit) [doc. 246-55].

to pay. Fluor contends that it is undisputed that the FEMA would not permit Fluor to construct a FEMA trailer park and did not pay Fluor the full amount necessary to build a FEMA trailer park. Fluor argues that FEMA's refusal to permit construction of the park and to pay Fluor for construction of the park established a failure of cause of the alleged oral contract and relieved Fluor of its obligation to construct the park.

Also alternatively, assuming the existence of an alleged oral contract, Fluor avers that Grand made the contract impossible to perform. Grand alleges that Fluor orally agreed to build a FEMA trailer park on the FEMA Leased Property if Grand leased the property to FEMA. Fluor notes that by leasing the property to FEMA, Grand divested itself of the right to control, enjoy, and possess the FEMA Leased Property, and, as a result, Fluor was legally prohibited from constructing the FEMA trailer park without FEMA's permission. Thus, Fluor was relieved of its alleged contractual obligation to build the free trailer park.

Grand submits excerpts from McConnaughhay's deposition testimony and argues that it has satisfied the "one witness" requirement.[12] McConnaughhay testified that he spoke to Wiley, who told him that Grand would benefit by signing the FEMA Lease.[13] Wiley also told him "if you agree to sign this lease with FEMA, then Fluor agrees to build this park for you."[14] Grand argues that McConnaughhay's attempts to get Fluor to stop destroying the land are consistent with his belief that he had a deal with Fluor.[15] Grand also submits Wiley's testimony that he could not recall details

---

[12] Pl.'s Ex. 1, pp. 222-224, 234, 352-354 (McConnaughhay Dep.) [doc. 269-2].

[13] Pl.'s Ex. 1, p. 234 (McConnaughhay Dep.) [doc. 269-2].

[14] Pl.'s Ex. 1, pp. 352-353 (McConnaughhay Dep.) [doc. 269-2].

[15] Grand cites Def.'s MSJ Memo., p. 11.

about his discussions with McConnaughhay.[16] Finally, Grand insists that the weight and credibility of witness testimony should be decided by the trier of fact.

Grand contends that it has produced the requisite "corroborating circumstances." Grand notes that it had completed all preparatory work on the entire Grand Acadian Site before Hurricane Rita, thereby giving FEMA a "jump start" on building the FEMA trailer park.[17] Grand argues that the FEMA project would be valuable to Fluor. The project was of immense size, and was "fully cost reimbursable with [a] percentage fee," but Grand notes there would be no project without Grand signing the FEMA Lease.[18]

Grand points to Fluor's continuous contact with Grand in the weeks preceding Grand's signing of the FEMA Lease.[19] Grand states that FEMA hired Fluor to handle the entire project, from determining the site's suitability for construction, to removing FEMA trailers at the end of construction. Grand also explains that Fluor sent plans to McConnaughhay on its own initiative and received McConnaughhay's approval before sending the plans to FEMA. The government representative testified that Wiley was not authorized to release any design or site plans to McConnaughhay.[20]

Grand argues that the actual construction activities corroborate the agreement between Fluor and Grand, noting numerous times when Fluor wanted to make a change in engineering plans, that

---

[16] Pl.'s Ex 2, pp. 37-38, 41, 50 (Wiley Dep.) [docs. 269-3 - 269-15].

[17] Pl.'s Ex. 4, pp. 34-50 (Waishes Dep.) [doc. 269-17].

[18] Pl.'s Ex. 5, pp. 129-130, 223 (Ashby Dep.) [docs. 269-18 - 269-21].

[19] See Pl.'s Exs. 7-13 [docs. 269-23 - 269-29].

[20] Pl.'s Ex. 11, p. 54 (Townsend Dep.) [doc. 269-27].

Fluor contacted Grand before contacting FEMA.[21] Grand also cites an email from McConnaughhay to Fluor's employee Rothkamm, arguing this letter enforces the agreement between the parties.[22]

La. Civ. Code Art. 1846 sets forth explicit requirements for the proof of oral contracts priced or valued in excess of $500.00:

> When a writing is not required by law, a contract not reduced to writing, for a price or, in the absence of a price, for a value not in excess of five hundred dollars may be proved by competent evidence.

> If the price or value is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances.

The party demanding performance of the obligation must prove the existence of the contract. *Suire v. Lafayette City-Parish Consol. Gov't.*, 2004-1459 (La. 4/12/05), 907 So. 2d 37, 58. While a representative of the party demanding performance may serve as the one credible witness, the "other corroborating circumstances" must come from a different source. *Id.* Thus, Grand must prove existence of the contract, using testimony of a credible witness and other corroborating evidence.

Fluor submits McConnaughhay's statements that he negotiated the FEMA Lease and construction of infrastructure with FEMA personnel, McConnaughhay's testimony that FEMA attempted to induce Grand with the promise of infrastructure, and Wiley's testimony that he acted as a conduit between Grand and FEMA and submitted park plans to Grand under FEMA's direction. Additionally, Fluor notes that the FEMA Lease is an agreement between Grand and FEMA and nothing in the lease obligates FEMA to use Fluor as contractor of the trailer park.

Fluor has satisfied its summary judgment burden; therefore, the burden shifts to Grand to

---

[21] Pl.'s Ex. 1, pp. 342-347, 359-361 (McConnaughhay Dep.) [doc. 269-2].

[22] Pl.'s Ex, 1, pp. 359-361 (McConnaughhay Dep.) [doc. 269-2].

designate specific facts presenting a genuine issue for trial. Through McConnaughhay's deposition and statements, Grand has produced testimony of a credible witness, but Grand has failed to produce sufficient corroborating evidence to establish existence of the alleged contract.

Grand alleged that the oral contract is corroborated only by the fact that Fluor provided McConnaughhay with plans to review, and the fact that Grand signed a lease with FEMA. Grand has not produced evidence to show that Fluor's submission of the site plans was anything more than Fluor personnel acting as FEMA's contractor, nor has Grand produced evidence that anything in the FEMA lease obligates FEMA to use Fluor to construct the trailer park. Further, Grand admitted in its opposition that "FEMA hired Fluor to handle the entire project, [including] the construction..."of the trailer park. The information submitted by Grand fails to create an issue of fact that Fluor and Grand entered into an oral contract for the construction of a FEMA trailer park on the FEMA Leased Property. Accordingly, it is ordered that the portion of Fluor's Motion for Partial Summary pertaining to Grand's oral contract claim is GRANTED.

**Detrimental Reliance Claim**

Fluor argues that Wiley never promised Grand that Fluor would build a trailer park for free if Grand agreed to sign the FEMA Lease.[23] Fluor adds that Grand understood that by signing the FEMA Lease, it surrendered all right to possess the FEMA Leased Property and FEMA retained the exclusive right to decide to build the park. Thus, because FEMA refused to build the park, Fluor argues that the implied condition of the promise was not fulfilled and Fluor was relieved of its obligation to perform.

Alternatively, assuming Fluor did make a promise, Fluor contends that Grand's reliance on

---

[23] Def.'s Ex. 45, pp. 32-40 (Wiley Dep.) [doc. 248-5].

that promise was unreasonable.  Fluor notes that the FEMA Lease divested Grand of the right to control and possess the property, that Fluor needed FEMA's permission to construct the park, and that Grand admitted Fluor would only build the park if FEMA paid for construction.[24]  Fluor argues that it was unreasonable for Grand to rely on Fluor's alleged promise when only FEMA had the contractual right to decide whether a FEMA trailer park could be built, and when Fluor had no legal right to build a FEMA trailer park without FEMA's permission.

Grand contends that Fluor did promise to build a park, despite McConnaughhay's refusal to use the word "promise" when referring to his agreement with Wiley.[25]  Grand argues that Fluor made the requisite "representation by conduct or word," and that whether McConnaughhay reasonably relied upon that representation is a disputed issue for the jury's determination.

Grand adds that its signing of the FEMA Lease demonstrated its reliance on Fluor's representations and made Fluor's performance possible, not impossible.  Grand insists that Grand's signing of the lease was the only way Fluor would be hired by FEMA to build the park on Grand's property.

To establish a detrimental reliance claim, a party must prove "a representation by conduct or word, justifiable reliance, and a change in position to one's detriment because of the reliance." *Suire*, 907 So. 2d at 59.

"Courts have found reliance to be unreasonable as a matter of law when a plaintiff relies on oral representations despite the law's insistence on certain formalities, when a plaintiff relies on a representation that is clearly not intended to bind the defendant or induce the plaintiff into reliance,

---

[24] Def.'s Ex. 43, pp. 224, 233 (McConnaughhay Dep.) [doc. 248-2].

[25] Def.'s Ex. 43, p. 244 (McConnaughhay Dep.) [doc. 248-2].

10

and when a plaintiff relies on extra-contractual representations despite the existence of an unambiguous, fully integrated contract that provides limited ways of altering the parties' relationship." *Drs. Bethea, Moustoukas, and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399 (5th Cir. 2004), *cert. denied*, 513 U.S. 815 (1994) (internal citations omitted).

The *Bethea* court held that it was unreasonable as a matter of law for Dr. Bethea to rely on St. Paul's representation that it would provide free tail coverage, when the insurance policy issued by St. Paul did not provide for such. *Id.* at 405.

Here, assuming Fluor promised to build Grand a $10 million trailer park for free, there is no genuine issue of material fact that Grand's reliance on that representation was unreasonable. Grand knew that by signing the FEMA Lease, it surrendered the right to possess the property and that Fluor would need FEMA's permission to construct the park. Further, Grand knew that Fluor would only build the park if FEMA paid for construction. Grand has not presented sufficient evidence to demonstrate a disputed issue of fact that its reliance was reasonable. Moreover, Grand has not demonstrated that its reliance on Fluor's representation caused a change in position to Grand's detriment because Grand lost nothing by signing the FEMA Lease. Accordingly, the portion of Fluor's Motion for Partial Summary Judgment regarding detrimental reliance is GRANTED.

IT IS ORDERED that Fluor's Motion for Partial Summary Judgment, [doc. 248], is hereby GRANTED.

Lake Charles, Louisiana, this _18_ day of February, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

11