RECEIVED
IN LAKE CHARLES, LA.
MAR 22 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GRAND ACADIAN, INC. | : | DOCKET NO. 2:07 CV 295 |
| VS. | : | JUDGE MINALDI |
| FLUOR CORPORATION, et al | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Partial Summary Judgment on Plaintiff's Lost Profits Claim, filed by Fluor Enterprises, Inc. and Plant Performance Services, LLC ("Fluor") [doc. 338]. Fluor's motion adopts Group Contractors, LLC's Motion for Partial Summary Judgment on Plaintiff's Lost Profits Claim [doc. 325]. The plaintiff, Grand Acadian, Inc. ("Grand"), filed an Opposition, [doc. 357], and Group Contractors, LLC filed a Reply [doc. 375].

## FACTS

In December 2004, Grand Acadian, Inc. ("Grand") purchased 60 acres of property in Sulphur, Louisiana ("the Grand Acadian Site") on which to build and develop an RV park.[1] In September 2005, following Hurricanes Katrina and Rita, the United States Army Corps of Engineers ("the Corps") and the Federal Emergency Management Agency ("FEMA") identified the Grand Acadian Site as a possible location for construction of a group housing site for displaced hurricane victims.[2]

---

[1] First Supp. Pet. [doc. 108].

[2] Def.'s Ex. 9, pp. 22, 26-27 (Jarboe Dep.) [doc. 246-31].

1

FEMA had previously awarded a contract to Fluor to assist FEMA in providing temporary housing in the aftermath of natural disasters.[3]

On December 7, 2005, the United States executed an agreement with Grand ("the FEMA Lease") to lease the western 27.4 acres of the Grand Acadian site for use as a FEMA trailer park ("the FEMA Leased Property").[4] In conjunction with the FEMA Lease, FEMA directed Fluor to construct a FEMA trailer park on the FEMA Leased Property.[5]

Fluor began construction activities on the FEMA Leased Property in January 2006, and FEMA cancelled the park project by February 2006. Grand alleges that construction was halted because of Fluor's negligent construction practices and increased costs, while Fluor argues that soil conditions on the FEMA Leased Property significantly affected the project costs and schedule. Fluor contends that FEMA cancelled the park project due to the decreasing need for temporary housing. FEMA eventually cancelled the FEMA Lease in December 2006.

Grand filed suit against Fluor, alleging that but for Fluor's negligent dirt work on the FEMA Leased Property, it would have succeeded in developing an RV park on both the FEMA Leased Property and the eastern half of the Grand Acadian Site ("the Grand East Half"). Grand seeks damages for the projected profits Grand claims it would have been able to generate from its RV park over the next 30 years.[6] On February 24, 2010, this Court had a hearing on this motion and took the matter under advisement. A jury trial is scheduled for March 22, 2010.

---

[3] Def.'s Ex. 7 (Ashby Decl.) [doc. 246-8].

[4] Def.'s Ex. 8 (FEMA Lease) [doc. 246-30].

[5] Def.'s Ex. 10, pp. 42-45 (Nadsady Dep.) [doc. 246-32]; Def.'s Ex. 15 [doc. 246-37].

[6] First Supp. Pet. [doc. 108].

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

Fluor seeks dismissal of Grand's lost profits claim in its entirety because these damages are contingent, speculative, and cannot be proved to a reasonable certainty. Fluor argues that the lost profits claim is contingent upon a business, the existence of which is uncertain, highlighting the fact

that Grand never obtained the financing necessary to develop an RV park. Fluor acknowledges that Grand had a preliminary approval for financing from PMC Commercial Trust ("PMC") for a $1.94 million loan, approximately half of the $3 to 4 million McConnaughhay said was needed to "get us going."[7] However, Fluor points out that PMC conditioned its approval on several things, including a cash injection of $857,000, "approval of the site," and Small Business Association approval with a 75% guarantee.[8] PMC further conditioned its financing on Grand's production of documentation on 15 items specifically listed in the letter.[9] Fluor notes PMC's preliminary approval offer to fund the $1.9 million loan expired on July 4, 2005 because of Grand's failure to meet PMC's conditions.[10] Fluor points to Grand's admission that it did not have $857,000 in cash or assets, and that it did not provide PMC with at least 4 of the items listed and could not recall whether it provided the other 11 items to PMC. Fluor notes more than a year after completing its business plan and purchasing the 60 acres, Grand had still not secured any financing to begin construction of an RV park.[11]

Fluor argues that the lost profits claim is also contingent upon Grand's unsubstantiated projections of its own successes for the future. In support of its lost profits claim, Grand relies upon its putative experts, Richard Stockwell and Daryl Burckel, to quantify its losses, and Fluor argues

---

[7] Def.'s Ex. 2, pp. 19, 73 (Grand Dep.) [doc. 325-4]; Def.'s Ex. 4 [doc. 325-6].

[8] Def.'s Ex. 4 [doc. 325-6].

[9] *Id.*

[10] *Id.*

[11] Def.'s Ex. 1, pp. 52-57, 83, 85-86 (McConnaughhay Dep.) [doc. 325-3].

that Grand's lost profits projections are based on unsupported, unreliable assumptions.[12]

Grand counters that it has submitted evidence that its lost profits claim is not speculative and argues that new businesses can recover lost profits. As evidence that Grand would have had a profitable RV park if not for Fluor's negligence, Grand submits that the park was going to be run by experienced business persons, the nature of the RV industry is sound, and there is a strong market for Grand's RV park. Finally, Grand argues that it secured financing, pointing to PMC's approval letter.[13]

Louisiana law is clear that lost profits "must be proven with reasonable certainty and cannot be based on conjecture and speculation." *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 448 (5th Cir. 2002) (internal citations omitted). That is, the plaintiff must show that the loss of profits is more probable than not. *Wasco, Inc. v. Economic Development Unit, Inc.*, 461 So. 2d 1055, 1057 (La. 1984). A lost profits claim will not be supported by mere estimates of loss. *Id.*

In *Schwamb v. Delta Air Lines, Inc.*, the plaintiff sought lost profits from the frustration of a real estate project. *Schwamb v. Delta Air Lines, Inc.*, 516 So. 2d 452 (La. App. 1 Cir. 1987), writ denied 520 So. 2d 750 (La. 1988). The project was planned, part of the real estate was purchased, and the plaintiff had an option to purchase additional real estate. However, at the time of loss, construction had not yet begun and plaintiff had received no financing for the project. The court rejected the plaintiff's claim for lost profits, concluding that the evidence was too speculative because the project may not have been completed, or if it was completed, it may not have been

---

[12] Grand's experts, Stockwell and Burckel, have been excluded from testifying in this matter; therefore, this issue is moot.

[13] Pl.'s Ex. 7 (PMC Dep) [doc. 357-8].

profitable. *Id.* at 468.

Fluor has submitted evidence sufficient to satisfy its summary judgment burden; therefore, the burden shifts to Grand to designate specific facts presenting a genuine issue for trial. When asked by this Court to produce evidence that it obtained financing for the RV park, Grand pointed to the preliminary approval letter and Pat McConnaughhay's deposition testimony discussing why Grand did not meet the final requirements to suggest that Fluor's alleged negligence prevented Grand from obtaining the necessary financing.[14]

After a full review of the evidence, it is clear that Grand had not obtained any financing for its RV park. PMC's preliminary approval offer to fund the $1.94 million expired on July 4, 2005, several months before Fluor's entry on Grand's property. Moreover, Grand has not produced any evidence that it obtained or attempted to obtain financing for its park since July 2005; thus, Grand's lost profits claim is too remote and speculative to be proven with reasonable certainty. Accordingly,

IT IS ORDERED that Fluor's Motion for Partial Summary Judgment, [doc. 338], is hereby GRANTED.

Lake Charles, Louisiana, this 20 day of March, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[14] Pl.'s Ex. 7 [doc. 357-8]; Pl.'s Ex. 8 (McConnaughhay Dep.) [doc. 357-9].