RECEIVED
IN LAKE CHARLES, LA.
MAR 29 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GRAND ACADIAN, INC.** | : | **DOCKET NO. 2:07 CV 295** |
| VS. | : | JUDGE MINALDI |
| **FLUOR CORPORATION, et al** | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment on the Crossclaim filed by Dexter Honore Construction Co., LLC, filed by Fluor Enterprises, Inc. ("Fluor") [doc. 333]. Crossclaim defendant Dexter Honore Construction Co., LLC ("DXHC") filed an Opposition, [doc. 390], and Fluor filed a Reply [doc. 412].

## FACTS

In December 2004, Grand Acadian, Inc. ("Grand") purchased 60 acres of property in Sulphur, Louisiana ("the Grand Acadian Site") on which to build and develop an RV park.[1] In September 2005, following Hurricanes Katrina and Rita, the United States Army Corps of Engineers ("the Corps") and the Federal Emergency Management Agency ("FEMA") identified the Grand Acadian Site as a possible location for construction of a group housing site for displaced hurricane victims.[2] FEMA had previously awarded a contract to Fluor to assist FEMA in providing temporary housing

---

[1] First Supp. Pet. [doc. 108].

[2] Def.'s Ex. 9, pp. 22, 26-27 (Jarboe Dep.) [doc. 246-31].

in the aftermath of natural disasters.[3]

In its crossclaim against Fluor, DXHC contends that, in order to satisfy certain obligations under its contract with FEMA, Fluor subcontracted with DXHC (the "Fluor/DXHC contract") to construct a FEMA trailer park on the property leased to FEMA by Grand (the "Grand project").[4] This contract was confected on December 28, 2005, and in February 2006, FEMA decided not to complete the Grand project, and Fluor terminated DXHC's contract.[5]

DXHC alleges that Fluor did not fully compensate DXHC under the terms of the Fluor/DXHC contract, and contends that it is also entitled to additional damages "related to extra work, delay, acceleration, disruption, differing-site conditions, incomplete and inaccurate plans/specifications/representations, and inefficiencies, lost productivity, increased overhead and lost profit."[6]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial.

---

[3] Def.'s Ex. 7 (Ashby Decl.) [doc. 246- 8].

[4] *Id.*

[5] *Id.*

[6] *Id.*

*Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). "Furthermore, the party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.*

If the movant satisfies this burden, however, then the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Tubacex*, 45 F.3d at 954. In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, a grant of summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party..." *Id.*

## ANALYSIS

Fluor seeks dismissal of DXHC's crossclaim on several grounds, which were outlined in Fluor's submitted brief. At a hearing on February 24, 2010, this Court denied all of Fluor's grounds for summary judgment, except for the issue of the contract notice provision, which was taken under advisement. This Court then issued an Order, allowing DXHC ten days to supplement its memorandum to include documents demonstrating that DXHC met the notification deadline in the Fluor/DXHC contract [doc. 517]. In response, DXHC filed a Supplemental Memorandum in Support of its Opposition to Fluor's Motion for Summary Judgment [doc. 555]. Fluor filed a Reply [doc. 567].

Fluor argues that DXHC waived its right to compensation by violating the notice provisions of the contract. On February 16, 2006, Fluor informed DXHC that the Fluor/DXHC contract was

terminated pursuant to Article 17 and instructed DXHC to proceed with the tasks associated with termination.[7] Fluor notes that Section 17.4 of the Fluor/DXHC contract provides that "[a]ll requests for compensation under any of the foregoing provisions of Section 17.3 shall be submitted to Company in accordance with the provisions of Article 15.0...In no event shall Contractor be entitled to any prospective profits or any damages."[8]

Fluor points out that Article 15.0 of the Fluor/DXHC contract sets forth both Fluor's and DXHC's responsibilities with respect to DXHC's claims for payment at the termination of the contract. Under Section 15.3, DXHC is required to submit to Fluor within ten days of the submission of termination notification "a detailed takeoff with supporting calculations and pricing for the change, together with any requested adjustments in the schedule."[9] Furthermore, "the pricing shall be itemized as required by and shall be in sufficient detail to permit an analysis of all labor, material, and equipment and shall cover all work involved in the change, whether such work was deleted, added, or modified."[10] Section 15.3 also requires that "all amounts related to subcontracts shall be supported in similar detail."[11] Moreover, Section 15.4 of the Fluor/DXHC contract provides that if DXHC "does not provide the detailed take-off to [Fluor] within the time allowed by Section 15.3, [DXHC] will have waived any right to additional compensation..."[12]

---

[7] Fluor's Ex. 6 [doc. 333-8].

[8] Fluor's Ex. 1 [doc. 333-3].

[9] Fluor's Ex. 1 [doc. 333-3].

[10] Fluor's Ex. 1 [doc. 333-3].

[11] Fluor's Ex. 1 [doc. 333-3].

[12] Fluor's Ex. 1 [doc. 333-3].

Fluor argues that DXHC failed to comply with its obligation to submit a detailed and supported analysis of all compensation DXHC claimed it was owed within the requisite period; thus, DXHC waived any right to pursue its claim for additional compensation. Fluor points out that instead of providing Fluor with notice of its claim within ten days, DXHC waited almost three years to notify Fluor of additional compensation allegedly owed to DXHC.[13]

DXHC notes that Fluor's notice of termination to DXHC stated "prior to the submission of costs please arrange to meet with the Fluor Project Team to ensure that all items are clearly understood and agreed to prior to your submission."[14] DXHC insists that this directive not to submit a written termination request until there was a face-to-face meeting with the Fluor Project Team, including Group Contractors, LLC ("Group"), waived any ten-day requirement in the Fluor/DXHC contract. DXHC submits a March 1, 2006 email from Group to Honore, demonstrating that Fluor and Group both requested that the meeting be postponed until March 2, 2006.[15]

DXHC notes that it submitted a pay request to Fluor on February 24, 2006, which included a claim for work done to the point of termination, claims for costs incurred after termination, and a claim for lost productivity.[16] DXHC also submitted an updated payment request dated March 6, 2006 that included the new Group claim and it submitted several other payment requests after March 2006.[17] DXHC argues that it complied with the notice provision, as the February 24, 2006 request

---

[13] Fluor's Exs. 2, 19, 20 [docs. 333-4, 21, 22].

[14] DXHC's Ex. 1 [doc. 555-1].

[15] DXHC's Ex. 2 [doc. 555-1].

[16] DXHC's Ex. 3 [doc. 555-1].

[17] DXHC's Exs. 5, 6 [doc. 555-1].

5

was submitted within ten days of Fluor's termination notification, and the March 6, 2006 request was submitted within ten days of the face-to-face meeting requested by Fluor.

Fluor has satisfied its burden for summary judgment; therefore, the burden shifts to DXHC to demonstrate there are specific facts that present a genuine issue for trial. DXHC attaches a payment request it submitted to Fluor within ten days after receipt of Fluor's termination notification. DXHC lists two amounts owed by Fluor, $1,283,996.60 and $1,084,744.60, and gives an itemized breakdown for only one of the amounts.

DXHC also submits a detailed payment request dated March 6, 2006 and argues that it complies with the ten day deadline computed from the date of a face-to-face meeting with Fluor. A waiver of a contractual right only occurs when (1) there is an existing right, (2) a party has knowledge of that right, and (3) the party displays an actual intention to relinquish the right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Alexander v. Cornett*, 42,147 (La. App. 2 Cir. 7/11/07), 961 So. 2d 622, 632 (internal citations omitted). DXHC presents no evidence that Fluor intentionally relinquished its rights to enforce the contract. Moreover, Fluor's termination notification clearly directs DXHC to "proceed immediately with the tasks associated with this termination as directed by Article 17" of the Fluor/DXHC Contract. DXHC has not designated specific facts showing there is a genuine issue for trial; Accordingly,

IT IS ORDERED that Fluor's Motion for Summary Judgment, [doc. 333], is hereby GRANTED.

Lake Charles, Louisiana, this ___ day of March, 2010.

                                              PATRICIA MINALDI
                                              UNITED STATES DISTRICT JUDGE