RECEIVED
IN LAKE CHARLES, LA.

MAR 29 2010

TONY R. MOORE, CLERK
BY_____
            DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GRAND ACADIAN, INC. | : | DOCKET NO. 2:07 CV 295 |
| VS. | : | JUDGE MINALDI |
| FLUOR CORPORATION, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a Motion in Limine filed by defendants Fluor Enterprises, Inc. and Plant Performance Services, LLC ("Fluor") [doc. 494]. The plaintiff, Grand Acadian, Inc. ("Grand"), filed an Opposition [doc. 558].

### FACTS

The General Services Administration ("GSA") prepared a document entitled "Pricing Negotiation Memorandum Grand Acadian Park December 7, 2005," ("PNM") in connection with its efforts to negotiate a lease with Grand.  The PNM provides numerous opinions and estimates regarding the value of the Grand site, the fair market rent for the site, and the future income that could be generated by the site.[1]  The PNM states that "a price of $252,262.50 was determined from several sources of information."[2]  It also states that the property could realize "over $600,000 per year in potential income," and provides estimates regarding the rental amount Grand could charge

---

[1] Def.'s Ex. 2 [doc. 494-3].

[2] *Id.*

for individual RV pads.[3]  Grand deposed several GSA employees regarding the PNM, including David Waishes, who signed the PNM, and Aaron Claggett, Garhett Gordon, Christian Townsend, and Eduardo Perez.

## ANALYSIS

Fluor anticipates that Grand will attempt to use the PNM and related testimony as evidence of the Grand property's value.  Fluor argues that the PNM should be excluded because it is inadmissible hearsay.  Further, Fluor notes that the GSA employees' testimony that they did not obtain the data and information supporting the valuation calculations provided in the PNM, and in some cases were unsure of the source of the underlying data.  Fluor adds that some of the value estimates included in the PNM were based upon figures provided by Grand's Pat McConnaughhay.

Fluor argues that the estimates and opinions contained in the PNM are not mere lay opinions, but are opinions based on skill, knowledge, and experience.  Fluor contends that the GSA employees' testimony should be excluded because none of the GSA employees are qualified to give reliable opinions regarding property value. Fluor points to Waishes' admission that he is not a real estate appraiser and has no expertise in valuing property.[4]  Similarly, none of the other GSA employees testified that they had any experience or expertise in valuing property.  Fluor notes that Clagget was only involved with the project for a few days in October 2005 and turned over the project to Gordon before any lease negotiations occurred.[5]  Gordon never visited the Grand property

---

[3] *Id.*

[4] Def.'s Ex. 1, p. 101 (Waishes Dep.) [doc. 494-1].

[5] Def.'s Ex. 3, pp. 14, 36 (Clagget Dep.) [doc. 494-3].

and did not draft the PNM.[6]  Further, he admitted he did not collect the data in the supporting documentation for the PNM and could not recall the source of most of that information.[7] Fluor also notes Townsend's testimony that the property value and lease had already been negotiated when he arrived on the project and his admission that he did not perform the calculations to determine fair market rent for the property as presented in the PNM.[8]  Finally, Fluor argues that the employees' testimony should be excluded because Grand failed to identify any of these witnesses as experts.

Grand counters that the PNM is not hearsay because Waishes' testimony will be introduced through his deposition testimony; thus, the PNM will become his "in court" testimony. Alternatively, Grand argues that if the PNM is hearsay, it is admissible as a business record or as a public record or report.

Grand argues that it was not required to designate the GSA witnesses as experts because these witnesses are "actors and viewers" with respect to transactions and occurrences central to this case. As "actors and viewers," Grand argues that the GSA employees are not "after-the-fact experts" hired in preparation for trial; thus Grand has no duty to designate them as expert witnesses.

Grand adds that even if it had a duty to designate the GSA employees as experts, Fluor is not prejudiced by admission of their testimony, noting that each witness was deposed and subjected to cross-examination by Fluor regarding the PNM.

---

[6] Def.'s Ex. 4, pp. 26, 60 (Gordon Dep.) [doc. 494-5].

[7] *Id.* at 62.

[8] Def.'s Ex. 5, pp. 86, 88 (Townsend Dep.) [doc. 494-6].

Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. One of the exceptions to the hearsay rule is Fed. R. Evid. 803(6), which allows admission of records of regularly conducted activity. The PNM and spreadsheet were prepared for the purposes of FEMA leasing the Grand property; thus, the PNM is admissible evidence.

The GSA employees- Waishes, Gordon, Clagget and Townsend- are properly qualified to testify regarding property valuation. The employees are considered "actors and viewers" of the transactions that are part of this lawsuit; thus, they are treated as ordinary witnesses. Moreover, Waishes, who signed the PNM and supervised Clagget, Gordon and Townsend, had been a realty specialist contracting officer for approximately eight years.[9] Waishes explained that although an actual "appraisal" was not done, the appraisal staff used the same science of a formal appraisal- comparables, sales, and prices- to estimate the underlying land value. Fluor's attacks on the PNM may be brought out on cross-examination. Accordingly,

IT IS ORDERED that Fluor's motion in limine is DENIED

Lake Charles, Louisiana, this ___ day of March, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[9] Pl.'s Ex. 1, p. 15 (Waishes Dep.) [doc. 558-1].

4